# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Commonwealth Edison Co. v. Munizzo*, 2013 IL App (3d) 120153

---

| | |
|---|---|
| Appellate Court Caption | COMMONWEALTH EDISON COMPANY, Plaintiff and Counterdefendant-Appellee, v. MARK MUNIZZO, Defendant and Counterplaintiff-Appellant. |
| District & No. | Third District<br>Docket No. 3-12-0153 |
| Filed | March 26, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a small claims action, defendant's motion for leave to petition for sanctions under Supreme Court Rule 137 filed 29 days after judgment was entered in the small claims case amounted to a pending "Rule 137 claim" for purposes of Supreme Court Rule 303(a), and the motion tolled the 30-day period for filing an appeal, since the judgment in the small claims case was "not final and appealable," and although the trial court erred in finding the motion for leave to seek sanctions was untimely, the court's additional finding denying the motion on its merits based on the lack of any basis for sanctions was upheld, and, furthermore, plaintiff's motion to bar arguments alluding to consumer fraud for purposes of defendant's counterclaim under the Consumer Fraud Act was properly granted. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 10-SC-11862; the Hon. Susan T. O'Leary, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | William P. Sullivan (argued), of Frankfort, for appellant. |

Robert S. Markin and Sandy L. Morris (argued), both of Chico & Nunes, PC, of Chicago, for appellee.

Panel     JUSTICE SCHMIDT delivered the judgment of the court, with opinion.

Justices Holdridge and Lytton concurred in the judgment with opinion.

**OPINION**

¶ 1     In this case, we must initially decide an issue of first impression: whether the filing of a motion for leave to file a petition for Illinois Supreme Court Rule 137 (eff. Jan. 4, 2013) sanctions with the proposed petition attached tolls the 30-day period for filing a notice of appeal following a final judgment in a small claims case. Plaintiff-counterdefendant, Commonwealth Edison Company (Com Ed), brought this small claims action, alleging defendant-counterplaintiff, Mark Munizzo, was negligent and violated the Illinois Underground Utility Facilities Damage Prevention Act (the Act) (220 ILCS 50/1 *et seq.* (West 2010)) after a utility line became damaged during excavation of defendant's property. Munizzo counterclaimed against Com Ed, alleging negligence and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2010)). Prior to trial, the circuit court granted Com Ed's motion *in limine* barring any discussion of the Consumer Fraud Act. Following a bench trial, the circuit court of Will County ruled against Com Ed on its claims and against Munizzo on his counterclaims. Munizzo filed a motion for leave to file a petition for sanctions, which the trial court found untimely and without merit. Munizzo appeals, claiming: (1) the trial court erred in ruling his motion for sanctions was untimely and, in the alternative, the trial court erred in ruling the motion for sanctions was without merit; and (2) the trial court erred in granting Com Ed's motion *in limine*, which effectively dismissed Munizzo's claim under the Consumer Fraud Act. Com Ed counters that we have no jurisdiction to entertain this appeal.

¶ 2                          BACKGROUND

¶ 3     Mark Munizzo purchased property in Frankfort, Illinois, which he planned to convert into an Italian gelateria. This dispute arises from excavation work which took place on that property. During the excavation, a power line was damaged, causing a fuse within one of Com Ed's transformers to blow and resulting in an electrical outage to the neighborhood. Com Ed repaired the damage, then brought this suit against Munizzo to recover $7,528.81 in damages. Munizzo counterclaimed, alleging Com Ed violated the Consumer Fraud Act (815 ILCS 505/2 (West 2010)) and further that Com Ed negligently "marked the location of underground facilities" on plaintiff's property.

¶ 4     Prior to trial, Com Ed filed a motion *in limine* to bar arguments alluding to consumer

fraud. The motion claims Munizzo is not a "consumer" within the meaning of the Consumer Fraud Act. 815 ILCS 505/1(e) (West 2010). The motion further argues that the Public Utilities Act (220 ILCS 5/10-101 *et seq.* (West 2010)) mandates any action seeking to resolve claims of excess charges by Com Ed be initiated in the Illinois Commerce Commission. The trial court granted Com Ed's motion.

¶ 5     Evidence indicated that prior to excavating, Munizzo contacted the Joint Utility Locating Information for Excavators (JULIE), a statutorily created, not-for-profit corporation that acts as a message-handling notification service for underground facility owners and takes information about planned excavations. JULIE then distributes the information to facility owners. After being notified by JULIE, Com Ed sent a representative to the property. The representative marked the property with red spray paint and red flags to delineate the approximate location of Com Ed's underground facilities.

¶ 6     Munizzo testified that he did not read the description of an excavator's obligations under the Act before excavation and was unaware of the meaning of the terms "tolerance zone" or "approximate location" as defined by the Act. 220 ILCS 50/2.7, 2.8 (West 2010). Munizzo stated that the only portion of the Act he was "familiar with" was what "they tell you about." Munizzo noted he was informed to stay clear of "the 18 inches on either side of a marked line." Munizzo noted that he undertook the excavation work himself along with "buddies of [his] who were helping [him]." Munizzo noted one of his friends specialized in excavating around transformers; this friend never suggested asking Com Ed to turn the power to the transformer off prior to excavation.

¶ 7     Munizzo and his friends began excavation by digging a trench between the transformer and the building on the property. The workers used a dull screwdriver to loosen the dirt and a trowel to remove the dirt. They then removed the loose dirt from the trench within six to seven feet of the transformer. Munizzo noted the workers also used a shovel to scoop dirt out of the trench, but claimed that the shovel was not used for digging near the transformer.

¶ 8     During excavation, one of Munizzo's workers unearthed an underground electric line. As workers dug near the transformer, they heard a "pop" which they later learned was caused by damage to an underground power line. The damage caused a short circuit and an electrical outage to businesses and houses in the immediate area.

¶ 9     After the outage, Munizzo called JULIE to report the incident. JULIE recorded the phone call. During the conversation, the JULIE representative asked Munizzo if he uncovered a marked line. He answered in the affirmative, noting that he had, in fact, "uncovered a marked line." During his trial testimony, he claimed he "was referring to the ground wire" and not a "hot wire." He acknowledged that he never used the term "ground wire" while on the phone with the JULIE representative following the outage. He did not use the term "ground wire" as he "had no idea what this wire was" when he was on the phone. Munizzo further testified at trial that prior to excavation, he did not know whether power flowed from east or west to the transformer. Munizzo could not identify in which direction the power flowed. Munizzo stated that Com Ed sent a "troubleman" out to the site after his call. Munizzo claimed the troubleman stated, "well, this is obviously mismarked" and that "you are lucky somebody didn't get smoked."

-3-

¶ 10    Com Ed repaired the damage later that day. Afterwards, Munizzo received a bill from Com Ed and "was dumbfounded by the number" so he requested an itemized "breakdown of the costs." He claimed to have not seen the itemized breakdown until the first day of trial.

¶ 11    After the incident, Com Ed's liability representative, Diane Harris, conducted an investigation. She reviewed photographs of the scene as well as Munizzo's call in which he indicated he damaged a "marked line." She noted that one of the markings indicated the presence of a transformer. The locations of transformers are marked with an "H" and a photo of the area indicated to Harris that "part of the H appears to be chopped off." Based on the results of Ms. Harris's investigation, Com Ed issued an invoice to Munizzo for the costs of repairing the damaged caused to Com Ed's facilities. Munizzo did not pay the amount claimed.

¶ 12    Witness Steven Partain testified that he was one of Munizzo's friends who helped during the excavation. He has 30 years of construction experience, including "a lot of masonry experience, concrete experience, a lot of framing, trim work." He noted that damage to Com Ed's line occurred approximately four feet from the transformer.

¶ 13    Ultimately, on December 13, 2011, the trial court entered judgment against Com Ed on its claim and against Munizzo on his counterclaim, finding that neither party had met its burden of proof. Twenty-nine days later, on January 11, 2012, Munizzo filed a motion for leave to file a motion for sanctions, attaching his motion for sanctions. The motion for leave to file a motion for sanctions acknowledges that Illinois Supreme Court Rule 287(b) (eff. Aug. 1, 1992) requires litigants to obtain leave of court prior to filing motions in small claims cases and that any "hearing to obtain such leave will extend past Supreme Court Rule 137's filing deadline of 30 days after the entry of final judgment."

¶ 14    Nevertheless, Munizzo claimed good cause existed under Illinois Supreme Court Rule 183 to extend the time for filing his motion for sanctions. The motion for sanctions, and memorandum in support thereof, claims Com Ed and its counsel violated Illinois Supreme Court Rule 137 (eff. Jan. 4, 2013). In these documents, Munizzo argues that "undisputed trial testimony showed not only that Com Ed failed to properly mark the excavation site, but also showed that Com Ed knew that the excavation site was improperly marked" but continued to seek reimbursement from Munizzo.

¶ 15    The trial court held a hearing on January 20, 2012, on Munizzo's motion. On the same day, the trial court entered an order denying the motion, finding it "untimely and no basis for sanctions." Munizzo filed his notice of appeal on February 16, 2012. This appeal followed.


¶ 16                                    ANALYSIS

¶ 17                                I. Our Jurisdiction

¶ 18    Noting that Munizzo did not file his notice of appeal for more than two months after the entry of the trial court's December 13, 2011, judgment, Com Ed argues we have no jurisdiction to hear this appeal.

¶ 19    The record is clear that following a two-day trial, the circuit court entered judgment on December 13, 2011, finding neither Com Ed nor Munizzo satisfied their respective burdens

of proof. Undoubtedly, the December 13, 2011, judgment is a final and appealable order. To appeal that order, Illinois Supreme Court Rule 303(a)(1) (eff. May 30, 2008) mandates that a party file a notice of appeal within 30 days or file "a timely posttrial motion directed against the judgment" within the 30 days.

¶ 20   In the event of the filing of a "timely posttrial motion directed against the judgment," the time for filing a notice of an appeal extends to "30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order." Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008). Rule 303(a)(1) continues that a "judgment or order is not final and appealable while a Rule 137 claim remains pending unless the court enters a finding pursuant to Rule 304(a)." *Id.*

¶ 21   Again, the trial court rendered its judgment against both plaintiff and counterplaintiff on December 13, 2011. As such, absent the filing of a timely postjudgment motion or a pending "Rule 137 claim," the 30-day time period identified in Rule 303(a)(1) expired Thursday, January 12, 2012.

¶ 22   On January 11, 2012, Munizzo filed a motion for leave to file a petition for sanctions to which he attached his proposed petition and a memorandum in support thereof. He claims these filings are sufficient to toll Rule 303(a)'s 30-day requirement. To support this proposition, Munizzo cites to *Bolin v. Sosamon*, 181 Ill. App. 3d 442 (1989), and *Besic v. Lattof Chevrolet, Inc.*, 2012 IL App (1st) 103185.

¶ 23   In *Bolin*, the defendant counterclaimed in the small claims action securing a judgment against plaintiff in the amount of $1,037.63. *Bolin*, 181 Ill. App. 3d at 444. The *Bolin* plaintiff then filed a motion for leave of court to file a motion seeking to vacate the judgment. *Id.* at 445. This led the *Bolin* court to state that "it appears the supreme court intended that the filing of the petition for leave to file a post-trial motion accompanied by the post-trial motion tolls the 30-day period for filing a notice of appeal." *Id.* at 445. The First District parroted the *Bolin* language in *Besic*. *Besic*, 2012 IL App (1st) 103185, ¶ 3.

¶ 24   Undoubtedly, had Munizzo filed a motion seeking leave to file a motion attacking the judgment against him on January 11, 2012, *Bolin* and *Besic* would support his contention that such a filing was sufficient to toll Rule 303(a)'s 30-day period. He, however, did not file such pleadings, instead choosing to file a motion for leave to file a petition for sanctions pursuant to Rule 137. Ill. S. Ct. R. 137 (eff. Feb. 1, 1994). Our task is slightly different from that of the *Bolin* court. As noted above, the *Bolin* court was called upon to answer the question of whether the filing of a motion seeking leave to file a postjudgment motion in a small claims case tolled Rule 303(a)'s 30-day period in which one must file a notice of appeal. *Bolin*, 181 Ill. App. 3d at 445. We must determine whether, in a small claims case, the filing of a timely motion for leave to file a petition for sanctions under Rule 137 renders an otherwise final and appealable judgment "not final and appealable" within the meaning of Rule 303(a). We find it does.

¶ 25   We are cognizant that one substantive difference between a motion attacking a judgment and a petition for sanctions brought pursuant to Rule 137 is that, by definition, no motion attacking a judgment can be brought until the judgment is actually entered. The motions in *Bolin* and *Besic* were traditional postjudgment motions as defined by section 2-1203 of the

Illinois Code of Civil Procedure (735 ILCS 5/2-1203 (West 2010)) as they actually attacked the judgment rendered in those cases. *Bolin*, 181 Ill. App. 3d at 444; *Besic*, 2012 IL App (1st) 103185, ¶ 3. Conversely, a petition for sanctions under Rule 137, such as the one filed by defendant-counterplaintiff in this matter, can be filed at any time during the litigation. *Peterson v. Randhava*, 313 Ill. App. 3d 1, 7 (2000) ("The plain language of the rule itself does not preclude a party from filing a Rule 137 motion at an early stage but, rather, merely indicates that the motion must be brought 'within' the civil action in which the 'pleading, motion or other paper *** has been filed.' [Citation.]").

¶ 26     Nevertheless, we agree with Munizzo that the language of Rule 303 and Rule 137 when coupled with the courts' reasoning and holdings in *Bolin* and *Besic* should lead us to conclude that his motion for leave to file a petition for Rule 137 sanctions rendered the December 13, 2011, judgment "not final and appealable." Again, Rule 303 notes that a "judgment or order is not final and appealable while a Rule 137 claim remains pending unless the court enters a finding pursuant to Rule 304(a)." Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008). Supreme Court Rule 137 states, "Motions brought pursuant to this rule must be filed within 30 days of the entry of final judgment, or if a timely post-judgment motion is filed, within 30 days of the ruling on the post-judgment motion." Ill. S. Ct. R. 137 (eff. Jan. 4, 2013).

¶ 27     In 1987, our supreme court amended Supreme Court Rule 287 adding language which states that "no motion shall be filed in small claims cases, without prior leave of court." Ill. S. Ct. R. 287(b) (eff. Aug. 1, 1987). Citing to the committee comments of the amended rule, the *Bolin* court noted that "in small claims cases, post-trial motions may not be filed without leave of court. [Citation.] Since the purpose of the new rule is not to reduce appeals from small claims cases, but to 'simplify procedures and reduce the cost of litigation' [citation], it appears the supreme court intended that the filing of the petition for leave to file a post-trial motion accompanied by the post-trial motion tolls the 30-day period for filing a notice of appeal." *Bolin*, 181 Ill. App. 3d at 445. The *Besic* court recently agreed with that analysis when finding "that the obtaining leave requirement of Supreme Court Rule 287(b) does not rise to a jurisdictional requirement." *Besic*, 2012 IL App (1st) 103185, ¶ 3.

¶ 28     We hold that Munizzo's motion for leave to file a petition for sanctions and attached petition equated to a pending "Rule 137 claim" within the meaning of Rule 303(a). As such, the filing of Munizzo's motion for leave on January 11, 2012, rendered the December 13, 2011, judgment "not final and appealable." Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008). The trial court denied Munizzo's motion for leave on January 20, 2012. Within 30 days thereafter, on February 16, 2012, Munizzo filed a notice of appeal. Therefore, we find that we have jurisdiction to entertain this appeal.

¶ 29                                    II. Rule 137 Sanctions

¶ 30     As noted above, the trial court found Munizzo's motion for leave to file a petition for Rule 137 sanctions "untimely" and that the petition lacked substance noting "no basis for sanctions" existed. For the reasons stated above, we hold that Munizzo's motion requesting leave of court to file a petition for sanctions was, in fact, timely filed. Therefore, the trial

court erred in characterizing it as untimely.

¶ 31 Munizzo argues that if we find the trial court erred in characterizing his motion as untimely, we must remand the case back to the trial court so it can proceed to a hearing on Munizzo's petition for sanctions. We disagree. Of course, had the motion been untimely, the trial court would have been without jurisdiction to rule on its merits. However, we have found the motion timely, *ergo* jurisdiction existed.

¶ 32 The record reveals that the trial judge who denied Munizzo's motion, Judge O'Leary, was the same judge who presided over the trial. She not only found that the motion was untimely, but also made a substantive ruling that no basis for sanctions existed in the case at hand. That is, she also ruled on the merits of the request for Rule 137 sanctions.

¶ 33 We review a trial court's order granting or denying a petition for sanctions under the abuse of discretion standard. *Baker v. Daniel S. Berger, Ltd.*, 323 Ill. App. 3d 956 (2001). A trial court abuses its discretion when its " 'ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009) (quoting *People v. Hall*, 195 Ill. 2d 1, 20 (2000)). When reviewing a decision on a motion for sanctions, our primary consideration is whether the trial court's decision was informed, based on valid reasoning, and follows logically from the facts. *Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 244 (2000).

¶ 34 Supreme Court Rule 137 provides:

"Every pleading, motion and other document of a party represented by an attorney shall be signed by at least one attorney of record in his individual name ***. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee." Ill. S. Ct. R. 137 (eff. Jan. 4, 2013).

¶ 35 "The standard for evaluating a party's conduct under this rule is one of reasonableness under the circumstances existing at the time of the filing." *Rubino v. Circuit City Stores, Inc.*, 324 Ill. App. 3d 931, 946 (2001). The purpose of the rule is not to penalize litigants merely because they were not successful in the litigation. *Id.* Sanctions "are not warranted simply because the facts ultimately determined are adverse to those set forth in the pleadings." *Id.*

¶ 36 In his memorandum supporting his petition for sanctions, Munizzo argues that "undisputed trial testimony showed not only that Com Ed failed to properly mark the excavation site, but also showed that Com Ed knew that the excavation site was improperly

marked." Therefore, Munizzo posits that Com Ed and its attorney violated Rule 137 by bringing this law suit when any "reasonable inquiry" into the facts of the matter could only lead one to conclude that the suit was baseless as the lines were mismarked.

¶ 37       However, Diane Harris testified that she conducted an investigation into the cause of the power outage. Referring to photographs of the scene, Harris described the markings on the ground in detail explaining the difference between the red markings and white markings. She further discussed the significance of a marking which she believed to be an "H" indicating the presence of a transformer and transformer cable. She noted part of the "H" appeared to be "chopped off" by those doing the excavation work.

¶ 38       Harris testified that she saw no white markings on the ground, which are customarily made by those doing the excavation to identify the areas to be excavated. Harris reviewed a JULIE ticket, which indicated "that they exposed a marked line." Based upon her review of photographs, JULIE tickets and Munizzo's phone call after the incident, she determined Munizzo was liable for the outage for damaging a marked line.

¶ 39       During Munizzo's testimony, he acknowledged that he indicated in his call to JULIE after the incident that a "marked line" was "uncovered" during excavation. He explained that while the discussion with the JULIE representative used the term "marked line," he meant to discuss a ground wire not the transformer cable.

¶ 40       Munizzo's and Harris's testimony refutes any assertion that "undisputed" trial testimony indicated that Com Ed not only mismarked the power lines, but knew it mismarked the power lines before seeking reimbursement from Munizzo. As such, we cannot say the trial court abused its discretion when finding no basis in the record to impose sanctions.

¶ 41                              III. Consumer Fraud Claim

¶ 42       Finally, Munizzo argues that the trial court erred in granting Com Ed's motion *in limine* to bar arguments alluding to consumer fraud. Munizzo's counterclaim alleged that Com Ed violated section 2 of the Consumer Fraud Act (815 ILCS 505/2 (West 2010)). Specifically, Munizzo alleged that Com Ed mismarked the proposed excavation site, thereby rendering statements to the contrary material misrepresentations. These misrepresentations, Munizzo claimed, caused him to have to compensate "other business owners in the area for loss of business due to the power outage, and *** to retain counsel to defend Com Ed's baseless lawsuit."

¶ 43       Com Ed moved to bar any discussion of consumer fraud on multiple grounds. Initially, Com Ed argued Munizzo does not meet the requirements of a "consumer," which is necessary to entitle him to recover under the Consumer Fraud Act. Com Ed also argued that various statutes vest the Illinois Commerce Commission with exclusive jurisdiction to resolve any dispute over services it provides to customers.

¶ 44       In granting Com Ed's motion to bar arguments concerning consumer fraud, the trial court found that "the facts in this case I believe do not indicate that the plaintiff is a consumer. This was in connection with the marking of property for no fee *** [i]n connection with digging. And I don't think that in that context that there is appropriately a claim for consumer fraud." When announcing her ruling, the trial judge asked the parties if the evidence would show

whether Com Ed charged a fee for the service of marking the lines. Com Ed's attorney answered, "There is no fee." Munizzo's attorney remained silent. Thereafter, the trial court announced, "I don't think that in that context that there is appropriately a claim for consumer fraud" and granted Com Ed's motion *in limine* barring any discussion of consumer fraud at the trial. Having found Munizzo not to be a consumer within the definition of the Consumer Fraud Act, the trial court specifically stated it need not reach the question of whether Munizzo's Consumer Fraud Act claim should have originated in the Illinois Commerce Commission.

¶ 45     Munizzo argues that the trial court failed to properly comprehend the Act's "consumer" requirement. Munizzo claims he is "a business owner who purchases electricity and other services from Com Ed" and, therefore, he satisfies the definition of a consumer within the Consumer Fraud Act. Alternatively, he argues that if he is not a consumer under the Consumer Fraud Act, he still should have been allowed to pursue his counterclaim as "Com Ed sent Mr. Munizzo a bill for services that made untrue allegations of liability and that Com Ed pursued a lawsuit against Mr. Munizzo even though Com Ed knew that the lawsuit had no basis." He contends that "these allegations implicate consumer protection concerns" and, therefore, he was wrongly denied the ability to raise them in the trial court. Finally, Munizzo concludes that any suggestion "that objections to bills must be presented to the ICC" is without merit.

¶ 46     Com Ed acknowledges that Munizzo is a purchaser of electricity, yet notes that alleged misrepresentations, which serve as the basis for Munizzo's consumer fraud count, are not associated with any purchase. Com Ed notes that Munizzo very specifically pled that the alleged misrepresentations involved making "markings to depict that no underground cables were present at the site of Mr. Munizzo's proposed excavation when, in fact, underground cables were present." Therefore, Com Ed concludes the trial court correctly held that Munizzo is not a consumer as defined by the Consumer Fraud Act.

¶ 47     Initially, we must note our disagreement with Com Ed's assertion that we review this issue to determine if the trial court abused its discretion. While it is true that evidentiary motions, such as motions *in limine*, are within the trial court's discretion and are generally reviewed under an abuse of discretion standard (*Citibank, N.A. v. McGladrey & Pullen, LLP*, 2011 IL App (1st) 102427, ¶ 13), resolution of this issue requires us to determine, as did the trial court, whether Munizzo satisfies the consumer requirement of the Consumer Fraud Act. We review matters of statutory construction *de novo*. *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 22.

¶ 48     In *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 328 (1977), our supreme court held that the Consumer Fraud Act did not apply to plaintiff's action as he failed to meet the definition of consumers. The *Steinberg* plaintiff applied to the defendant's medical school, paying the mandatory $15 application fee required from all applicants. *Id.* at 327. After being denied admission, plaintiff sued, claiming many theories of recovery including breach of the Consumer Fraud Act. *Id.* While noting that the Consumer Fraud Act protects "consumers and borrowers and businessmen against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," the *Steinberg* court found plaintiff simply did not meet the statutory definition of a "consumer" and therefore

was properly foreclosed from bringing an action under the Consumer Fraud Act. (Internal quotation marks omitted.) *Id.* at 328. In making this finding, the *Steinberg* court needed to look no further than the definition section of the Consumer Fraud Act, noting it defined consumer as "any person who purchases or contracts for the purchase of merchandise." (Internal quotation marks omitted.) *Id.* (quoting Ill. Rev. Stat. 1973, ch. 121½, ¶ 261(e)). Today, and at all times relevant to this matter, the Consumer Fraud Act defines a consumer as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e) (West 2010).

¶ 49    The transaction at issue in this case involved Munizzo calling JULIE to request that Com Ed mark its underground facilities. As noted above, Munizzo's consumer fraud count alleges Com Ed made material misrepresentations when "creating markings to depict that no underground cables were present at the site of Mr. Munizzo's proposed excavation when, in fact, underground cables were present." Munizzo's consumer fraud count continues, claiming that Com Ed made further material misrepresentations in this matter by claiming that Munizzo caused damaged to a marked cable and in attempting to recover damages associated with repairs. We agree with the trial court that the transaction described in Munizzo's consumer fraud count is not one involving a person who purchases or contracts for the purchase of merchandise. Therefore, we find that the trial court did not err in finding Munizzo failed to meet the definition of a consumer within the Consumer Fraud Act. *Steinberg*, 69 Ill. 2d at 327; see also *Norton v. City of Chicago*, 267 Ill. App. 3d 507 (1994). Accordingly, we hold the trial court did not err in granting Com Ed's motion *in limine* seeking to bar evidence or discussion pertaining to Munizzo's counterclaim under the Consumer Fraud Act at trial.

¶ 50    Our review of the record simply fails to identify any authority cited by Munizzo to the trial court which supports the conclusion that Munizzo is a consumer within the meaning of the Consumer Fraud Act. The trial court asked the defendant-counterplaintiff if he was aware of any authority that allows for "this sort of case as a counterclaim against Commonwealth Edison?" The defendant-counterplaintiff replied, "I have not, no." Munizzo similarly fails to cite any authority to this court specifically holding that one meets the definition of a customer within the Consumer Fraud Act by calling JULIE to request the marking of underground utilities. The cases cited to us by Munizzo merely recite general platitudes such as the Consumer Fraud Act should be liberally construed in order to protect consumers, borrowers and business persons against deceptive practices (*Price v. Philip Morris, Inc.*, 219 Ill. 2d 182 (2005)) and that it draws no distinction between natural persons and businesses, granting both the status of a person. *Bank One Milwaukee v. Sanchez*, 336 Ill. App. 3d 319 (2003).

¶ 51                                    CONCLUSION

¶ 52    For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

¶ 53    Affirmed.