SIXTH DIVISION
April 7, 2006

No. 1-05-0384

| | | |
|---|---|---|
| LAZAR BROTHERS TRUCKING, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| A&B EXCAVATING, INC.; CORUS BANK, N.A.; | ) | |
| UNKNOWN OWNERS and NONRECORD CLAIMANTS, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SCHMIDT & ASSOCIATES CONSTRUCTION, INC., | ) | Honorable |
| | ) | Lewis M. Nixon, |
| Defendant-Appellee. | ) | Judge Presiding |

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Lazar Brothers Trucking sued to foreclose a mechanics lien it filed against property Schmidt & Associates Construction owned. The trial court dismissed the claim based on lien waivers Schmidt obtained from its contractor. The lien waivers showed that before Lazar filed its lien, Schmidt fully paid its contractor for the work Lazar performed. We hold that the lien waivers established a *prima facie* defense to Lazar's lawsuit, and Lazar failed to present evidence that could support an inference that Schmidt acted in bad faith or that it knew its contractor provided false affidavits when Schmidt paid the contractor. Therefore we affirm the judgment in favor of Schmidt.

BACKGROUND

Schmidt sought to develop land it owned in Northbrook.

Schmidt decided to act as its own general contractor for the project, directly hiring contractors to perform parts of the work. In August 2002 Schmidt entered into a written contract with A&B Excavating for excavation work at the site. Schmidt agreed to pay $25,000 for the work.

In September 2002 the president of A&B sent Schmidt a waiver of lien in which A&B acknowledged receipt of $20,000 from Schmidt for the excavation. The lien waiver incorporated an affidavit in which the president of A&B swore that no subcontractors worked on the excavation. A&B sent a second lien waiver for the remaining charge of $5,000 in February 2003, and again A&B's president swore that no subcontractors worked on the excavation.

Schmidt's president, in his capacity as president of the general contractor for the project, provided sworn statements showing the total price for the construction, and listing all contractors along with balances due each contractor. The affidavit dated January 2003 listed A&B as the excavation contractor and showed that Schmidt had paid A&B the full contract price of $25,000. A total of more than $80,000 remained due to the other contractors, and according to the affidavit, Schmidt as owner owed itself a fee for its work as the general contractor. The affidavit dated March 2003 showed a total due of $53,000, all for the work of contractors for landscaping, paving and curb and gutter work. No balance remained due to Schmidt for its work as general contractor.

According to the March affidavit, Schmidt had paid A&B an additional $4,200 for "Retention Pond Grading." A&B provided a final waiver, dated April 11, 2003, for the $4,200.

On April 14, 2003, Lazar recorded a notice of mechanics lien against the property, and on April 16, 2003, Lazar served Schmidt with notice of the lien.

Lazar sued Schmidt and A&B, amongst others, in 2004. Lazar alleged that A&B hired Lazar to haul excavation debris from the site. Lazar performed the work on January 16 and 17, 2003, charging A&B $170 per truckload for the work. The total bill for two days' work came to $28,730. A&B never paid the amount due. In the first count of the complaint, Lazar sought to foreclose its lien against Schmidt's property. The second count, directed against A&B, sounded in breach of contract. Lazar served discovery on Schmidt.

Schmidt did not respond to the discovery. Instead, Schmidt moved, under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2004)), to dismiss the foreclosure claim, based on the lien waivers A&B provided. The president of Schmidt swore in his affidavit that A&B did not inform Schmidt of the contract with Lazar, and Schmidt did not learn of Lazar's work before service of the notice of lien. Schmidt's president also swore that Schmidt paid A&B a total of $29,200. The affidavit corroborated the lien waivers.

The president of Lazar responded with an affidavit in which

1-05-0384

he swore:

"8. Pursuant to the usage and custom of the industry, the trucking/removal of debris is the expensive part of the work [A&B] was providing on January 16, 2003 and January 17, 2003[] (i.e., trucking/removal of debris is substantially more expensive than the site work).

9. Furthermore, it is the usage and custom of the industry to have trucking/removal of the debris contemporaneous with the site work, otherwise, it is more costly to perform the site work, pile up the debris and then later fill the trucks and truck the debris from the site.

10. Moreover, the trucking/removal of the debris in the case at bar was actually done contemporaneous with the site work at issue.

11. Additionally, as general contract and owner, SCHMIDT knew LAZAR was providing the Trucking/removal of debris services for the site, in that:

a. At the relevant time, LAZAR operated approximately 40 trucks, all with Lazar Brothers Trucking, Inc. on the doors.

b. At the time of trucking/removal of debris from the Property, Affiant, upon best information and belief, saw agents/employees

˘4˘

of SCHMIDT on site of the Property."

After hearing argument the court granted Schmidt's motion to dismiss count I, and the court added language to make the judgment immediately appealable.  See 155 Ill. 2d R. 304(a).

## ANALYSIS

We review *de novo* the dismissal of the lien foreclosure action pursuant to section 2-619.  See A.P. Properties, Inc. v. Goshinsky, 186 Ill. 2d 524, 531 (1999).  Lazar argues first that defendant's evidence leaves unresolved issues of fact, and therefore the court should not have dismissed the complaint.  In particular, Lazar objects that the evidence does not specify the time and method of Schmidt's payments to A&B, and Schmidt failed to establish facts that prove that it acted in good faith when it paid A&B.

The Mechanics Lien Act (770 ILCS 60/0.01 *et seq.* (West 2004)) comprehensively defines the rights and responsibilities of parties to construction contracts (Sanaghan v. Lawndale National Bank, 90 Ill. App. 2d 254, 257-58 (1967)) in a manner that balances the rights and duties of owners, contractors and subcontractors (Struebing Construction Co. v. Golub-Lake Shore Place Corp., 281 Ill. App. 3d 689, 694 (1996)).  To protect itself from paying twice for the same work, the owner must demand from the contractor, prior to payment, a sworn statement listing all subcontractors providing labor and materials to the contractor.  770 ILCS 60/5 (West 2004).  The contractor's

affidavits and lien waivers do not protect the owner if the owner has notice that the affidavits are false. <u>Knickerbocker Ice Co. v. Halsey Bros. Co.</u>, 262 Ill. 241, 245 (1914).

To protect its right to receive payments, each subcontractor must provide timely written notice to the owner of the amount owed to the subcontractor for work on the project. 770 ILCS 60/24 (West 2004). Even timely notice may not protect the subcontractor, if the owner made proper payments to the contractor prior to receiving notice of the subcontractor's claim. 770 ILCS 60/5, 21 (West 2004); <u>Contractors' Ready-Mix, Inc. v. Earl Given Construction Co.</u>, 242 Ill. App. 3d 448, 458 (1993). The subcontractor has the right to file its lien once it agrees to work on the project. See 770 ILCS 60/24 (West 2004).

Schmidt demanded an appropriate statement from its contractor, A&B, and A&B provided a sworn statement that falsely failed to list Lazar as its subcontractor. The lien waiver applies to all of the excavation work. Lazar had not, at the time A&B executed the lien waivers, served notice on Schmidt of its right to payment for work on the excavation.

Lazar contends that the lien waivers do not provide sufficient support for the judgment in favor of Schmidt, because Schmidt failed to present evidence proving that it relied on the affidavits in good faith. We disagree. The lien waivers from A&B established a *prima facie* defense to Lazar's claim for a mechanics lien. <u>William Aupperle & Sons, Inc. v. American</u>

1-05-0384

National Bank & Trust Co. of Chicago, 28 Ill. App. 3d 573, 576 (1975). Lazar had the burden of avoiding the effect of the waivers. Aupperle, 28 Ill. App. 3d at 576. Because Lazar argues that Schmidt acted in bad faith, in that Schmidt did not reasonably rely on the lien waivers, Lazar needed to present evidence sufficient to "raise a genuine issue of material fact as to whether there was such reliance." Merchants Environmental Industries, Inc. v. SLT Realty Ltd. Partnership, 314 Ill. App. 3d 848, 866 (2000).

Lazar contends that the affidavit of its president creates sufficient factual issues to require reversal of the judgment. According to Lazar's president, "the trucking/removal of debris is the expensive part of the work [A&B] was providing on January 16, 2003 and January 17, 2003." The lien waivers showed that Schmidt had already paid A&B $20,000 out of a total contract price of $25,000 before Lazar began its work removing the debris. We see nothing pernicious in the apparent advance payment. We hold that without some further evidence, the advance payment to A&B does not support an inference that Schmidt knew that A&B falsely swore that it hired no subcontractors.

Lazar also points to its evidence that it operated 40 trucks at the site, all labeled with Lazar's name in large letters. Lazar's president swore that he saw at the site persons he believed to be agents of Schmidt. Under Supreme Court Rule 191 (145 Ill. 2d R. 191), an affidavit must show that the affiant

could competently testify to its contents at trial. Burks Drywall, Inc. v. Washington Bank & Trust Co., 110 Ill. App. 3d 569, 576 (1982). Affidavits based on information and belief, rather than the affiant's personal knowledge, usually do not suffice because the affiant cannot testify to the facts he believes. Burks Drywall, 110 Ill. App. 3d at 576; Beattie v. Lindelof, 262 Ill. App. 3d 372, 382 (1994). The affidavit does not present admissible evidence that an agent of Schmidt saw Lazar's trucks on the site. Thus, Lazar has not presented evidence that could support an inference that Schmidt knew of Lazar's work at the site or the falsity of A&B's affidavit when it paid A&B.

Lazar's timely lien establishes its right to payments made to A&B after Lazar filed its lien, but Schmidt presented evidence, from A&B's lien waivers and Schmidt's affidavits of payments made. The documents show that by March 2003, Schmidt had already paid A&B all amounts due before Lazar filed its lien.

Lazar also claims a right to share in any payments Schmidt made to itself as general contractor after Lazar filed its lien. We note some conflict in Illinois authority on the issue. Compare Season Comfort Corp. v. Ben A. Borenstein Co., 281 Ill. App. 3d 648, 656 (1995), with Struebing Construction, 281 Ill. App. 3d at 693. We find that we need not resolve the conflict. Even assuming Lazar had a claim on payments from the owner to itself as general contractor, Schmidt presented unrebutted

evidence that it, as owner, made no payments to its general contractor after March 2003.  The affidavit dated March 2003 showed no balance due to the general contractor.  Lazar did not show that Schmidt made any payments to the general contractor after that date.  Thus, the evidence shows that Schmidt paid its contractor all amounts due for excavation work, and it completed payment to its general contractor, before Lazar filed its mechanics lien.  Lazar has not presented evidence that could support an inference that Schmidt made the payments improperly.

Lazar contends that the trial court incorrectly relied on the affidavit of Schmidt's president in which he said that Schmidt paid A&B.  If Schmidt's president testified at trial, Lazar would have the opportunity to ask him about the exact date and method of payment, and Lazar claims that answers to these questions might show the impropriety of Schmidt's payments. Regardless of the possible success of cross-examination, we see no basis for precluding Schmidt's president from testifying to a fact in his personal knowledge, that Schmidt paid A&B the amounts shown in the lien waivers.  Moreover, we see no indication that the trial court relied on the affidavit Schmidt's president prepared for this litigation.  That affidavit only corroborates the affidavits prepared in 2002 and 2003, during the course of construction, and those affidavits show that Schmidt fully paid its general contractor and A&B prior to April 14, 2003.

Finally, Lazar suggests that we should reverse the judgment

because Schmidt did not respond to discovery. Like the plaintiff in <u>Miller v. Thomas</u>, 275 Ill. App. 3d 779 (1995), Lazar here filed no affidavit indicating a need for discovery for its response to Schmidt's dispositive motion. In <u>Miller</u> the court said:

> "Rule 191(b) allows a party to file an affidavit stating that material facts are known only to parties whose affidavits the affiant is unable to procure by reason of hostility or otherwise. [Citation.] Because the plaintiffs did not use Rule 191(b) to address their discovery need, they cannot ask for a reversal on the basis that they required additional discovery to oppose the motion." <u>Miller</u>, 275 Ill. App. 3d at 790.

Following <u>Miller</u> we hold that Lazar waived any issue concerning Schmidt's failure to respond to discovery.

The lien waivers, showing that Schmidt fully paid for excavation work before Lazar filed its mechanics lien, established a defense to the foreclosure action. The evidence, including the affidavit of Lazar's president, failed to support an inference that Schmidt acted in bad faith or that it knew A&B supplied false affidavits when Schmidt paid A&B. Therefore, we affirm the judgment dismissing Lazar's claim for foreclosure on its mechanics lien.

Affirmed.

TULLY and O'MALLEY, JJ., concur.