2016 IL App (1st) 143666
No. 1-14-3666

Fifth Division
March 31, 2016

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| FATHER & SONS HOME IMPROVEMENT II, INC., | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | No. 11 CH 29050 |
| v. | ) | |
| | ) | The Honorable |
| TRACEE M. STUART and CEDRIC D. STUART, | ) | Robert Quinn, |
| Husband and Wife; MORTGAGE ELECTRONIC | ) | Judge Presiding. |
| REGISTRATION SYSTEMS, INC., a Corporation; | ) | |
| COUNTRYWIDE HOME LOANS, INC., a Corporation | ) | |
| Duly Licensed as an Illinois Residential Mortgage | ) | |
| Licensee; | ) | |
| | ) | |
| Defendants-Appellees | ) | |
| | ) | |
| (Trans-Land Financial Services, Inc., a Corporation Duly | ) | |
| Licensed as an Illinois Residential Mortgage Licensee; | ) | |
| RBS Citizen's NA, a Corporation Duly Licensed as an | ) | |
| Illinois Residential Mortgage Licensee; and Nonrecord | ) | |
| Claimants, | ) | |
| Defendants). | ) | |

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Neville concurred in the judgment and opinion.


**OPINION**

¶ 1        This appeal arises from plaintiff Father & Sons Home Improvement II, Inc.'s

mechanic's lien action brought against defendants Tracee and Cedric Stuart (the

Stuarts); and Bank of America, N.A., and Mortgage Electronic Registration Systems,

Inc. (together, Bank of America[1]). Plaintiff raises three issues on appeal: (1) whether the circuit court erred in finding that plaintiff had committed constructive fraud and granting summary judgment in favor of the Stuarts and Bank of America; (2) whether the circuit court erred in awarding the Stuarts attorney fees pursuant to the Mechanics Lien Act (770 ILCS 60/17(c) (West 2008)); and (3) whether the circuit court erred in awarding Bank of America attorney fees pursuant to Illinois Supreme Court Rule 137 (eff. July 1, 2013). We affirm all three of the circuit court's orders for the reasons set forth below.

¶ 2                                    BACKGROUND

¶ 3        Plaintiff's verified complaint alleges the following undisputed facts: defendants Tracee and Cedric Stuart, husband and wife, own a house located on Peoria Avenue in Chicago, Illinois. On March 9, 2005, the Stuarts obtained two mortgages on this house from Bank of America, which timely recorded these mortgages with the Cook County Recorder of Deeds' Office on March 29, 2005.

¶ 4        In April 2009, the Stuarts entered into a written construction agreement with plaintiff. Under this agreement, the Stuarts agreed to pay plaintiff $43,500 for the construction of a deck, garage, and basement in their house. Six months later, on September 10, 2009, plaintiff obtained a building permit from the Department of Buildings and soon after, plaintiff began construction on the Stuarts' house.[2] On

---

[1] Defendant Bank of America, N.A., appears in this litigation as successor-in-interest to Countrywide Home Loans, Inc. Defendant Mortgage Electronic Registration Systems, Inc., appears in this litigation as nominee of Countrywide Home Loans, Inc.

[2] The exact date construction on the Stuarts' house began is not provided in the record. The Stuarts claimed in their motion for summary judgment that construction began sometime in October or November of 2009.

September 12, 2009, the Stuarts and plaintiff agreed to modify this construction agreement to include a retail installment contract, under which plaintiff agreed to provide the Stuarts with financing for the costs of the construction project.[3]

¶ 5    Over the next five months, as the project progressed, plaintiff had the Stuarts sign "certificates" titled "Final Completion Certificate for Property Improvements." These certificates purported to report the Stuarts' satisfaction with the construction work on their house at various stages of the project. The Stuarts signed such certificates in November 2009, January 2010, February 2010, March 2010, and May 2010. Construction on the Stuarts' house was ultimately completed sometime in June 2010.

¶ 6    On September 17, 2009, eight months before plaintiff completed construction on the Stuarts' house, plaintiff recorded an "Original Contractor's Claim for a Lien" (the mechanic's lien) with the Cook County Recorder of Deeds. This mechanic's lien included an affidavit, signed by Nancy Martinez, president of plaintiff's company, which stated:

> "That on the 18th day of April, 2009 the Claimant, Father and Sons Home Imp. II, Inc., entered into a contract &/or Change Order with (1) said owner Tracee M. Stuart & Cedric D. Stuart (J). (2) to do a Deck, Garage and Basement for the building, (3) erected on said land for the sum of *$43,500.00* and on the 12th day of September, 2009, completed there-under (4) *All work required by said contract.*" (Emphasis in the original.)

---

[3] The retail installment contract did not modify the construction terms provided in the original construction agreement.

This affidavit further stated that the Stuarts owed plaintiff an additional sum of $2,700 for "extra and additional work" completed "at the special instance and request" of the Stuarts. In total, the balance of plaintiff's mechanic's lien was $46,200, not including interest.

¶ 7    On August 17, 2011, plaintiff filed a four-count verified complaint with the Cook County circuit court. Count I of this complaint sought foreclosure on the mechanic's lien; the other three counts, not at issue on appeal, raised claims for breach of contract, unjust enrichment, and *quantum meruit*. Bank of America responded by filing a motion to dismiss count I of plaintiff's verified complaint under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)). In this motion, Bank of America argued that plaintiff's mechanic's lien claim was not recorded within four months of completing the construction project and was therefore not enforceable against third-party creditors under the Mechanic's Lien Act (770 ILCS 60/7(a) (West 2008)). On October 13, 2011, the Stuarts filed a *pro se* [4] motion to dismiss arguing that plaintiff's mechanic's lien was invalid because it misrepresented the amount due and the work completed as of the time of its recording.

¶ 8    On December 2, 2011, the circuit court denied both motions to dismiss and the parties went on to engage in extensive written and oral discovery. A key part of this discovery involved plaintiff's responses to Bank of America's requests for admissions, in which plaintiff admits that "it completed work at the subject property

_____

[4] The Stuarts' *pro se* motion to dismiss did not specify the section of the Code of Civil Procedure under which the motion was filed. The Stuarts have subsequently acquired professional representation.

in or about June, 2010" and not on September 12, 2009, as the sworn and signed affidavit attached to the mechanic's lien attests.

¶ 9        On June 5, 2014, the Stuarts and Bank of America each moved for summary judgment on count I of plaintiff's verified complaint. In these motions, both Bank of America and the Stuarts argued that plaintiff committed constructive fraud by misrepresenting in its mechanic's lien and in the affidavit attached to the lien the work performed and the amount owed at the time the lien was recorded. In addition, Bank of America's motion argued that plaintiff's lien was not enforceable against third-party creditors because plaintiff had not recorded its mechanic's lien within four months of completing the construction project, as required under the Mechanic's Lien Act (770 ILCS 60/7(a) (West 2008)).

¶ 10       On June 12, 2014, plaintiff filed a response to defendants' motions for summary judgment arguing that the lien was timely filed as plaintiff had already performed architectural, permitting, and survey work before recording the lien and that the "erroneous overcharges and overstatements" in the lien did not rise to the level of constructive fraud as the Stuarts and Bank of America alleged.

¶ 11       On July 8, 2014, the circuit court granted the Stuarts' and Bank of America's motions for summary judgment, finding that plaintiff had committed constructive fraud in its mechanic's lien claim. The circuit court explained that "overstatement in and of itself is not sufficient with regard to constructive fraud. There has to be something more. In this particular situation there is something more. There is the affiant on behalf of Fathers and Sons stating that the work was completed some months after, after the claim for the lien was actually filed."

¶ 12    The circuit court also granted both defendants leave to file petitions for attorney fees, explaining that plaintiff's mechanic's lien action was nothing less than "an egregious case of constructive fraud" and that in previous cases the court had already warned plaintiff to stop overstating its lien claims.[5]

¶ 13    The Stuarts filed their petition for attorney fees in the amount of $13,675 pursuant to section 17 of the Mechanics Lien Act (770 ILCS 60/17(c) (West 2008)). Bank of America filed its amended petition for attorney fees in the amount of $26,291.02 pursuant to Illinois Supreme Court Rule 137. The circuit court granted both petitions, finding that:

> "the plaintiff knew or should have known that its September 19, 2009
> mechanics lien on which it based this litigation falsely stated that all
> work due under the contract was complete on September 12, 2009,
> when in fact the work was not complete until June 2010. Plaintiff
> verified that false fact or denied its corollary in various documents filed
> with the court. This false fact was the cornerstone of the litigation."

¶ 14    The circuit court's order granting Bank of America's attorney fees also listed the following five instances in which plaintiff filed pleadings in violation of Illinois Supreme Court Rule 137: (1) in paragraph 23 of the verified complaint where plaintiff incorporated its mechanic's lien, which falsely stated that "[a]ll work required by said contract" was completed by September 12, 2009; (2) in paragraph 23 of the verified complaint where plaintiff incorporated its mechanic's lien, which falsely stated that plaintiff "delivered extra labor and materials" and completed "extra

---

[5] The circuit court did not name specific cases.

and additional work" by September 12, 2009; (3) on page 2 of plaintiff's response to Bank of America's motion to dismiss, where it falsely stated that "[p]laintiff's lien notice was filed at a proper time"; (4) in plaintiff's answer to paragraph 5 of Bank of America's affirmative defenses, where plaintiff denied not having completed the work until after September 17, 2009; and (5) in plaintiff's answer to paragraph 6 of Bank of America's affirmative defenses, where plaintiff denied not having filed its claim for the lien within four months after completion of the work.

¶ 15    Plaintiff's remaining claims for breach of contract, unjust enrichment, and *quantum meruit* remain pending in the circuit court below. On November 3, 2014, however, the circuit court entered an order pursuant to Illinois Supreme Court Rule 304 finding that there is no just reason for delaying the enforcement of its judgments or appeal therefrom. This appeal follows.

¶ 16                            ANALYSIS

¶ 17    On appeal, we consider whether the circuit court erred in: (1) entering summary judgment in favor of Bank of America and the Stuarts, (2) awarding the Stuarts attorney fees pursuant to section 17 of the Mechanics Lien Act (770 ILCS 60/17(c) (West 2008)), and (3) awarding Bank of America attorney fees pursuant to Illinois Supreme Court Rule 137. We address each of these issues in turn.

¶ 18                          I. Jurisdiction

¶ 19    As an initial matter, we must discuss our appellate jurisdiction, given the fact that plaintiff has several claims that remain pending before the circuit court. "A reviewing court must ascertain its jurisdiction before proceeding in a cause of action, regardless of whether either party has raised the issue." *Secura Insurance Co. v.*

*Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009). "Jurisdiction of appellate courts is limited to reviewing appeals from final judgments, subject to statutory or supreme court rule exceptions." *In re Marriage of Verdung*, 126 Ill. 2d 542, 553 (1989) (citing *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 171 (1981), and *Village of Niles v. Szczesny*, 13 Ill. 2d 45, 47 (1958)). "A judgment is considered final 'if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof.' " *In re Curtis B.*, 203 Ill. 2d 53, 59 (2002) (quoting *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998)).

¶ 20        Plaintiff claims that the trial court has jurisdiction pursuant to Illinois Supreme Court Rules 301, 303, and 304. "Every final judgment in a civil case is appealable pursuant to Supreme Court Rule 301 [citation], and jurisdiction is vested in the appellate court to hear the appeal of that final judgment upon the filing of a notice of appeal." *F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 981-82 (1994). However, "[w]hen a final judgment or order does not dispose of all matters presented to the court, Supreme Court Rule 304(a) governs." *F.H. Prince & Co.*, 266 Ill. App. 3d at 982. Rule 304(a) provides that "[i]f multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010). In the case at bar, the trial court included a written finding pursuant to Rule 304(a) concerning the grant of summary judgment, the award of the Stuarts' attorney fees, and the award

of Bank of America's attorney fees. However, "the mere presence of Rule 304(a) language cannot make a nonfinal order final and appealable." *People ex rel. Block v. Darm*, 267 Ill. App. 3d 354, 356 (1994); *Cinch Manufacturing Co. v. Rosewell*, 255 Ill. App. 3d 37, 42-43 (1993). Thus, we must consider whether the three orders at issue in the instant case are final orders as to those claims.

¶ 21     With respect to the grant of the Stuarts' and Bank of America's motions for summary judgment, the grant of summary judgment resolved the issues concerning the validity of the mechanic's lien. "An order granting summary judgment is a final order." *Schilli Leasing, Inc. v. Forum Insurance Co.*, 254 Ill. App. 3d 731, 739 (1993); *Diggs v. Suburban Medical Center*, 191 Ill. App. 3d 828, 836 (1989). As such, the addition of Rule 304(a) language to the order renders it appealable.

¶ 22     Similarly, the grant of the Stuarts' attorney fees under the Mechanic's Lien Act and Bank of America's attorney fees under Rule 137 are final orders that are appealable with the inclusion of Rule 304(a) language. "A request for attorney fees is a claim within the meaning of Supreme Court Rule 304(a) [citation]. [Citation.] This is so whether the fees are sought pursuant to statute, such as the entry of sanctions for false pleadings, or pursuant to a contract provision." *Brown & Kerr, Inc. v. American Stores Properties, Inc.*, 306 Ill. App. 3d 1023, 1028 (1999). Thus, an order resolving those claims is appealable when Rule 304(a) language is included. See *West American Insurance Co. v. J.R. Construction Co.*, 334 Ill. App. 3d 75, 88 (2002) (finding jurisdiction to review the denial of a request for sanctions under section 155 of the Insurance Code (215 ILCS 5/155 (West 1998)) with the inclusion of Rule 304(a) language). We note that the requests for attorney fees concern only the

attorney fees that relate to the mechanic's lien action, not the attorney fees concerning plaintiff's pending claims. Accordingly, we find we have jurisdiction to consider the orders at issue in the instant appeal.

¶ 23                                    II. Summary Judgment

¶ 24        A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2008). The trial court must view the pleadings, depositions, admissions, affidavits, and exhibits in the light most favorable to the nonmoving party. *North Shore Community Bank & Trust Co. v. Sheffield Wellington LLC*, 2014 IL App (1st) 123784, ¶ 60 (citing *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004)).

¶ 25        A defendant moving for summary judgment bears the burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The defendant may meet this burden either by affirmatively showing that some element of the case must be resolved in its favor, or by establishing the absence of evidence supporting the nonmoving party's case. *Nedzvekas*, 374 Ill. App. 3d at 624 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

¶ 26        In short, "summary judgment is a drastic measure" only granted when the movant's right to judgment is clear and free from doubt. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, (1992). "Mere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999).

¶ 27    We review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp.*, 154 Ill. 2d at 102. *De novo* consideration requires us to perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). Ultimately, we may affirm the trial court's decision on any basis that appears in the record before us, whether or not the trial court in fact relied on that basis, and even if the trial court's reasoning was incorrect. *Ray Dancer, Inc. v. DMC Corp.,* 230 Ill. App. 3d 40, 50 (1992).

¶ 28    In their motions for summary judgment both Bank of America and the Stuarts claimed that plaintiff's mechanic's lien fraudulently stated that plaintiff completed all the work required under the construction agreement by September 12, 2009, when in fact, plaintiff did not even begin construction on the Stuarts' house until sometime in October or November of 2009. The Stuarts further claimed that plaintiff's mechanic's lien falsely stated that they owed plaintiff $46,200 as of September 12, 2009, when the first payment under the parties' retail installment contract was not due until November 1, 2009. Plaintiff does not dispute these allegations. Instead, plaintiff maintains that the false statements in its mechanic's lien amount to nothing more than "erroneous overcharges and overstatements" and that the record does not support the circuit court's finding that it recorded the mechanic's lien with the intent to defraud defendants. We do not find this argument persuasive.

¶ 29    We begin our discussion by reiterating the well-established principles that guide our analysis of the Mechanic's Lien Act (the Act) (770 ILCS 60/1 *et seq.* (West 2008)). The Act is a comprehensive statutory enactment that outlines the rights, responsibilities, and remedies of parties to construction contracts, including owners,

contractors, subcontractors, and third parties. *Lazar Brothers Trucking, Inc., v. A & B Excavating, Inc.,* 365 Ill. App. 3d 559, 562 (2006); *Struebing Construction Co. v. Golub–Lake Shore Place Corp.,* 281 Ill. App. 3d 689, 694 (1996). The overall purpose of the Act is " 'to require a person with an interest in real property to pay for improvements or benefits which have been induced or encouraged by his or her own conduct.' " *Stafford–Smith, Inc. v. Intercontinental River East, LLC,* 378 Ill. App. 3d 236, 240 (2007) (quoting *Leveyfilm, Inc. v. Cosmopolitan Bank & Trust*, 274 Ill. App. 3d 348, 352 (1995)).

¶ 30    The right to a mechanic's lien claim is nevertheless a statutory right in derogation of the common law and a contractor therefore must strictly comply with the requirements of the Act to be eligible for relief. *Matanky Realty Group, Inc. v. Katris,* 367 Ill. App. 3d 839, 841 (2006); *Tefco Construction Co., Inc. v. Continental Community Bank & Trust Co.*, 357 Ill. App. 3d 714, 719 (2005) (explaining that "[w]hile the Act should be construed liberally as a remedial one, being in derogation of common law, it is strictly construed with reference to the requirements upon which the right to a lien depends").

¶ 31    With these general principles in mind we turn to the relevant provisions of the Act. Section 7 of the Act provides that: "[n]o such lien shall be defeated to the proper amount thereof because of an error or overcharging on the part of any person claiming a lien therefor under this Act, unless it shall be shown that such error or overcharge is made with intent to defraud." 770 ILCS 60/7 (West 2008). " 'Intent to defraud may [be] inferred from documents containing overstated lien amounts combined with additional evidence.' " *Cordeck Sales, Inc. v. Construction Systems,*

*Inc.,* 382 Ill. App. 3d 334, 373 (2008) (quoting *Peter J. Hartmann Co. v. Capitol Bank & Trust, Co.* 353 Ill. App. 3d 700, 708 (2004)). The requirement that there be intent to defraud is designed "to protect an honest lien claimant who makes a mistake rather than a dishonest claimant who knowingly makes a false statement." *Peter J. Hartmann Co.,* 353 Ill. App. 3d at 706. When there is evidence, however, that the lien claimant knowingly filed a lien claim containing false statements the claim will be defeated because "the effect of such a lien claimant's claim is to give the appearance of a greater encumbrance on the property than that to which he is entitled." *Peter J. Hartmann Co.,* 353 Ill. App. 3d at 706.

¶ 32    Thus, not only will courts invalidate a mechanic's lien on the basis of actual fraud, but also on the basis of constructive fraud. *Lohmann Golf Designs, Inc. v. Keisler*, 260 Ill. App. 3d 886, 891 (1994) *appeal allowed, cause remanded*, 157 Ill. 2d 504 (1994), and *supplemented,* 260 Ill. App. 3d at 894; see also *LaSalle National Trust, N.A. v. Board of Directors of the 1100 Lake Shore Drive Condominium*, 287 Ill. App. 3d 449, 455 (1997) (" '[fraud] is no less fraudulent, either in law or in morals, because it is called constructive fraud' " (quoting *Warner v. Flack*, 278 Ill. 303, 313 (1917))).

¶ 33    In *Lohmann*, for example, we held that a contractor engaged in constructive fraud when the contractor filed separate lien claims on three different properties seeking in each of the claims the aggregate value of all the properties combined and effectively tripling the amount of its lien claim. *Lohmann*, 260 Ill. App. 3d at 891; see also *Bank of America National Trust & Savings Ass'n v. Zedd Investments, Inc.*, 276 Ill. App. 3d 998, 1001 (1995) (finding that a contractor's filing of two separate liens

for each parcel of land in the subdivision it had worked on constituted constructive fraud because it exaggerated the amount owed to the contractor); *Fedco Electric Co. v. Stunkel.*, 77 Ill. App. 3d 48, 51 (1979) (finding that a contractor's overstatement in a mechanic's lien claim amounted to constructive fraud due to the size of the overstatement and the contractor's knowledge of the overcharges).

¶ 34    Even under the theory of constructive fraud, however, a mechanic's lien claim will not be defeated simply because the lien claim contains overstatements or overcharges. *Cordeck Sales,* 382 Ill. App. 3d at 373. Rather, to invalidate a lien claim on the basis of constructive fraud, there must be additional evidence demonstrating that the contractor *knowingly* made the overstatement or overcharge. See *Cordeck Sales,* 382 Ill. App. 3d at 371 (finding that an overstatement in a mechanic's lien claim did not constitute constructive fraud because aside from the lien claim itself there was no other evidence from which fraudulent intent could be inferred); *Peter J. Hartmann Co.*, 353 Ill. App. 3d at 710 (finding that a contractor's filing of multiple notices and claims did not constitute constructive fraud because the notices and claims considered as a whole clearly indicated a single lien claim encumbering the same property); *North Shore Community Bank & Trust Co. v. Sheffield Wellington LLC*, 2014 IL App (1st) 123784, ¶ 149 (finding that an overcharge in a contractor's mechanic's lien claim was not substantial enough to constitute constructive fraud).

¶ 35    The additional evidence required to establish constructive fraud may, however, come in the form of an affidavit, signed by an agent of a contractor's company, which is attached to the mechanic's lien claim, and which falsely attests to the truth of overstatements and overcharges made by the contractor. See *Lohmann*, 260 Ill. App.

14

3d at 892 (finding that a contractor knowingly overstated its lien claim when the president of the contractor's company signed affidavits attesting to the truth of the statements made in the contractor's mechanic's lien claims); see also *Fedco Electric Co.,* 77 Ill. App. 3d at 50 (finding that a contractor knowingly overstated its lien claim when the president of the contractor's company admitted in his deposition that the contractor failed to credit the defendant's past payments).

¶ 36      In the case at bar, we find that the record before us leaves no room for doubt over whether plaintiff, at the very least, committed constructive fraud. The allegations of fraud here, unlike the allegations of fraud discussed in *Cordeck Sales*, *Peter J. Hartmann Co.*, and *Sheffield Wellington,* are not merely based on overstatements or overcharges, but rather on patently false statements that plaintiff used to establish its right to a mechanic's lien in the first place. See *Cordeck Sales,* 382 Ill. App. 3d at 371; *Peter J. Hartmann Co.*, 353 Ill. App. 3d at 710; *Sheffield Wellington LLC*, 2014 IL App (1st) 123784, ¶ 149.

¶ 37      First, plaintiff's mechanic's lien, recorded on September 17, 2009, falsely stated that all the work required under the construction agreement, including the construction of the garage, basement, and deck, was completed by September 12, 2009. This statement was proven false by plaintiff's own admission that "it completed work at the subject property in or about June, 2010." Plaintiff must have known that it had not completed all the work required under the construction agreement as the Department of Buildings only issued plaintiff a building permit on September 10, 2009. Likewise, the "completion certificates," which plaintiff had the Stuarts sign as the project progressed, clearly indicate that plaintiff knew that as of September 17,

15

2009, it had not constructed any of the land improvements (the garage, deck, and basement) required under the construction agreement.

¶ 38    Beyond providing a fabricated completion date, plaintiff's mechanic's lien also stated falsely that the Stuarts owed plaintiff $46,200 as of September 12, 2009. This statement was proven false by the clear and unambiguous terms of the parties' retail installment contract, under which the Stuarts were not required to make the first installment payment until November 1, 2009.

¶ 39    Finally, here, as in *Lohmann*, plaintiff attached to its mechanic's lien the signed and sworn affidavit of Nancy Martinez, president of plaintiff's company, falsely attesting to the truth of the overstatements and overcharges made in its mechanic's lien claim. See *Lohmann*, 260 Ill. App. 3d at 892. The circuit court thus reasonably inferred that plaintiff knew that its mechanic's lien contained false statements. Indeed, even construing the pleadings, admissions, exhibits, and affidavits strictly against defendants and liberally in favor of plaintiff the circuit court here had no choice but to conclude that plaintiff's mechanic's lien, based on patently false statements, constituted constructive fraud.

¶ 40    Plaintiff's assertion on appeal that the circuit court's decision "rewrites the Act" by making every mistaken overcharge or overstatement in a mechanic's lien a *per se* violation is simply not true. See 770 ILCS 60/7 (West 2008) ("[n]o such lien shall be defeated *** unless it shall be shown that such error or overcharge is made with intent to defraud"). As we explained above, even under the theory of constructive fraud, a mechanic's lien will not be defeated unless there is additional evidence demonstrating that the contractor knowingly made the overcharges and

overstatements. *Cordeck Sales,* 382 Ill. App. 3d at 373. The false statements in plaintiff's mechanic's lien, however, cannot be characterized as mere overstatements or overcharges, but rather as knowingly false statements that were clearly designed to allow plaintiff to bring a fraudulent mechanic's lien action against defendants.

¶ 41    We further find it irrelevant that plaintiff performed architectural, permit, and survey work before recording its mechanic's lien. See *First Bank of Roscoe v. Rinaldi*, 262 Ill. App. 3d 179, 184 (1994) ("architects, structural engineers, professional engineers, land surveyors, and property managers who perform any service or incur any expense for any purpose are entitled to a lien under the Act"). Even if plaintiff's architectural, permit, and survey work was lienable, plaintiff had no right to falsely claim that *all the work* required under the construction agreement was completed by September 12, 2009. Plaintiff also fraudulently claimed $46,200, which was the full value of the construction agreement.

¶ 42    We thus agree with the circuit court that no issue of material fact existed as to whether plaintiff's mechanic's lien constituted constructive fraud, and we accordingly find that the circuit court properly concluded that the Stuarts and Bank of America were entitled to summary judgment.

¶ 43    Having established that the circuit court properly granted summary judgment in favor of both defendants on the basis of constructive fraud, we find it unnecessary to discuss Bank of America's alternative argument that plaintiff's mechanic's lien was not timely filed within four months of completing construction on the Stuarts' house. See 770 ILCS 60/7(a) (West 2008).

¶ 44                    III. Attorney Fees Under Section 17 of the Mechanic's Lien Act

¶ 45          In addition to granting summary judgment to both defendants, the circuit court awarded the Stuarts $13,675 in attorney fees pursuant to section 17 of the Mechanic's Lien Act (770 ILCS 60/17 (West 2008)). The circuit court based this award on the Stuarts' petition for attorney fees, which identified the responsible attorneys, described their expertise and hourly rate, and detailed all the relevant work entries involved in the case. On appeal, plaintiff argues that this award was "excessive." In particular, plaintiff argues that it was not objectively reasonable for the Stuarts' attorneys to spend nearly 55 hours on a "straightforward" mechanic's lien action. Plaintiff also claims that it was not objectively reasonable for the Stuarts' attorneys to spend eight hours on researching and drafting a motion for summary judgment. We do not find plaintiff's argument to be persuasive, and we find no basis to disturb the circuit court's award of attorney fees.

¶ 46          Section 17(c) provides that "[i]f the court specifically finds that a lien claimant has brought an action under this Act without just cause or right, the court may tax the claimant the reasonable attorney's fees of the owner who contracted to have the improvements made and defended the action, but not those of any other party." 770 ILCS 60/17(c) (West 2008). The terms "without just cause or right" are defined as "a claim asserted by a lien claimant or a defense asserted by the owner who contracted to have the improvements made, which is not well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." 770 ILCS 60/17(d) (West 2008).

¶ 47 A trial court's decision awarding attorney fees under section 17 of the Mechanic's Lien Act is reviewed under the abuse of discretion standard. *Central Illinois Electric Services, L.L.C. v. Slepian*, 358 Ill. App. 3d 545, 550 (2005). Under this standard, a trial court does not abuse its discretion " 'unless, in view of all the circumstances, its decision so exceeded the bounds of reason that no person would take the view adopted by the trial court.' " *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 51 (2009) (quoting *In re Marriage of Demar,* 385 Ill. App. 3d 837, 852 (2008)). The rationale for this standard is that a party challenging a trial court's decision regarding attorney fees "is actually challenging the trial court's discretion in determining what is reasonable." *Guerrant v. Roth*, 334 Ill. App. 3d 259, 263 (2002); see also *Peleton, Inc. v. McGivern's Inc.*, 375 Ill. App. 3d 222, 225 (2007). A trial court therefore has "broad discretionary powers in awarding attorney fees." *Mirar Development, Inc. v. Kroner,* 308 Ill. App. 3d 483, 485 (1999) (citing *In re Estate of Callahan*, 144 Ill. 2d 32, 44 (1991)).

¶ 48 In the case at bar, plaintiff challenges the circuit court's award of attorney fees solely on the basis that the award was "excessive." Merely characterizing an award of attorney fees as "excessive," however, does not amount to establishing that the trial court abused its discretion. "The determination as to what constitutes reasonable compensation is a matter peculiarly within the discretion of the trial court." *Chicago Title & Trust Co., Trustee Under Trust No. 89-044884 v. Chicago Title & Trust Co., Trustee Under Trust No. 1092636*, 248 Ill. App. 3d 1065, 1072 (1993). A trial court is indeed permitted to use its own knowledge and experience in assessing the time required to complete particular services or activities. *Chicago Title & Trust Co.,* 248

Ill. App. 3d at 1073 (citing *In re Estate of Healy*, 137 Ill. App. 3d 406, 411 (1985)). A court of review, in contrast, may not reverse the trial court's award of attorney fees merely because it may have reached a different conclusion. *Chicago Title & Trust Co.,* 248 Ill. App. 3d at 1073; *In re Estate of Healy,* 137 Ill. App. 3d at 411.

¶ 49        Furthermore, the record in the present case makes it clear that the Stuarts' petition for attorney fees provided the circuit court with all the required detailed information: it identified the responsible attorneys, described the expertise and hourly rate of the attorneys, and detailed all the relevant work entries involved in this case. See *Gambino*, 398 Ill. App. 3d at 66 ("the petition for fees must specify the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged therefor"); see also *Ealy v. Peddy,* 138 Ill. App. 3d 397, 400 (1985). Plaintiff, on the other hand, has failed to include in the record any transcripts from the circuit court's hearing awarding the Stuarts their attorney fees. See *Mars v. Priester*, 205 Ill. App. 3d 1060, 1066 (1990) ("[a]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error"). We are accordingly required to presume that the circuit court, relying on its experience and knowledge, carefully reviewed the Stuarts' petition for attorney fees and found this petition as reasonable. *Mars*, 205 Ill. App. 3d at 1066 ("[i]n the absence of such a record on appeal, and upon a claim of error, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis *** doubts which may arise from the incompleteness of the record will be resolved against the appellant."); see also *Chicago Title & Trust Co.*, 248 Ill. App. 3d at 1075.

¶ 50    We thus decline plaintiff's invitation to make a *de novo* determination as to the reasonableness of the circuit court's award of attorney fees and we accordingly find that the circuit court did not abuse its discretion in awarding the Stuarts $13,675 in attorney fees.

¶ 51                          IV. Sanctions Under Supreme Court Rule 137

¶ 52    In addition to awarding attorney fees to the Stuarts, the circuit court sanctioned plaintiff and awarded Bank of America $26,291.02 in attorney fees pursuant to Illinois Supreme Court Rule 137. Ill. S. Ct. R. 137 (eff. July 1, 2013). Plaintiff appeals this award of attorney fees on numerous grounds. First, plaintiff argues that sanctions were not warranted in the present case because its mechanic's lien claim was based on a legal theory grounded in existing law, namely, the theory that a contractor is not required to complete all the work required under a construction agreement before recording a mechanic's lien claim.

¶ 53    Second, in the alternative, plaintiff argues that even if sanctions were warranted, the attorney fees awarded to Bank of America were "unreasonably excessive." In support of this argument, plaintiff claims that "it defies logic" that Bank of America expended 105 hours defending a "non-complex" mechanic's lien action that the Stuarts were able to defend successfully by expending only 54 hours. Plaintiff further claims that Bank of America's petition for attorney fees included "double billings" and duplicative entries. For example, according to plaintiff, Bank of America improperly included in its petition four separate entries that were all marked for the same task of researching applicable mechanic's lien case law. Finally, plaintiff argues

that the circuit court erred in awarding Bank of America over $1,000 in paralegal fees, which constitute office overhead expenses that are not recoverable.

¶ 54 We address each of plaintiff's arguments in turn. However, here too, we find no reason to disturb the circuit court's award of attorney fees.

¶ 55 Illinois Supreme Court Rule 137(a) provides:

"(a) *** Every pleading, motion and other document of a party represented by an attorney shall be signed by at least one attorney of record ***. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. S. Ct. R. 137(a) (eff. July 1, 2013).

¶ 56 " 'The purpose of [Rule 137] is to prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions based upon unsupported allegations of fact or law.' " *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶¶ 13, 39 (quoting *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1074 (1995)); see also *Espevik v. Kaye*, 277 Ill. App. 3d 689, 697 (1996) (explaining the same). Rule 137 is thus penal in nature and must be

strictly construed. *Citi Mortgage, Inc. v. Johnson*, 2013 IL App (2d) 120719, ¶ 41 (citing *Sadler v. Creekmur*, 354 Ill. App. 3d 1029, 1045 (2004)).

¶ 57 Rule 137 is not, however, intended to punish litigants for making losing arguments. Indeed, a trial court considering whether sanctions are warranted in a particular case should not engage in hindsight, but rather determine what was reasonable at the time the attorney or party signed the document or made its motion. *Arnold*, 2015 IL 118110, ¶ 39 (citing *Fremarek,* 272 Ill. App. 3d at 1074). Courts should also not impose sanctions solely because the facts ultimately determined in a particular case are adverse to the facts set forth originally in the pleadings. *Commonwealth Edison Co. v. Munizzo*, 2013 IL App (3d) 120153, ¶ 35 (citing *Rubino v. Circuit City Stores, Inc.*, 324 Ill. App. 3d 931, 946 (2001)).

¶ 58 The determination of whether to impose sanctions under Rule 137 ultimately rests with the sound discretion of the trial court. *In re Marriage of Schneider*, 298 Ill. App. 3d 103, 109 (1998) (citing *Senese v. Climatemp, Inc.*, 289 Ill. App. 3d 570, 581-82 (1997)). The trial court's decision to impose or deny sanctions is thus entitled to great weight on appeal, and its decision will not be disturbed absent an abuse of discretion. *Bennett & Kahnweiler, Inc. v. American National Bank & Trust Co. of Chicago*, 256 Ill. App. 3d 1002, 1007 (1993) (citing *In re Estate of Wernick*, 127 Ill. 2d 61, 78 (1989)). Under this standard, a trial court is only said to have abused its discretion where no reasonable person would take the view adopted by the trial court. *Arnold*, 2015 IL 118110, ¶ 16. We thus limit our review to "whether the trial court's decision was informed, based on valid reasoning, and follows logically from the facts." *Munizzo*, 2013 IL App (3d) 120153, ¶ 33.

¶ 59    We first address plaintiff's argument that sanctions were not warranted in the present case. Plaintiff argues that its mechanic's lien claim was well grounded in the theory that a contractor does not need to complete all the work required under a construction agreement before recording a mechanic's lien claim. Plaintiff is correct; a contractor does not need to complete all the work required under a construction agreement before recording a mechanic's lien claim. *Cordeck Sales, Inc. v. Construction Systems, Inc.*, 382 Ill. App. 3d 334, 389 (2008) (explaining that the term "completion" as used in the Mechanic's Lien Act does not refer to completion of the contract, but rather to completion of the work for which the contractor seeks to enforce its lien).

¶ 60    The circuit court here, however, did not sanction plaintiff for recording its mechanic's lien claim prematurely, but rather for repeatedly submitting documents to the court containing false statements about plaintiff's right to enforce its mechanic's lien claim. See *Lohmann*, 260 Ill. App. 3d at 886 (affirming a circuit court's decision imposing sanctions on a contractor who filed an excessive mechanic's lien claim that wrongly encumbered the subject property and clouded the property owner's title).

¶ 61    In particular, the circuit court here listed five instances where plaintiff violated Rule 137:  (1) in paragraph 23 of the verified complaint where plaintiff incorporated its mechanic's lien falsely stating that "[a]ll work required by said contract" was completed by September 12, 2009; (2) in paragraph 23 of the verified complaint where plaintiff incorporated its mechanic's lien falsely stating that plaintiff "delivered extra labor and materials" and completed "extra and additional work" by September 12, 2009; (3) on page 2 of plaintiff's response to Bank of America's motion to

24

dismiss, where plaintiff falsely stated that "[p]laintiff's lien notice was filed at a proper time"; (4) in plaintiff's answer to paragraph 5 of Bank of America's affirmative defenses, where plaintiff denied not having completed the work until after September 17, 2009; and (5) in plaintiff's answer to paragraph 6 of Bank of America's affirmative defenses, where plaintiff denied not having filed its claim for the lien within four months after completion of the work.

¶ 62      In conclusion, there was no theory grounded in existing law that permitted plaintiff to falsely state in its mechanic's lien claim that all the work required under the construction agreement was completed, when in fact the work had not been completed. There was also no theory grounded in existing law that allowed plaintiff to misrepresent the amount owed by the Stuarts at the time the lien claim was recorded. Any such a theory would indeed defeat the vary purpose of the Mechanic's Lien Act, which is to ensure that persons with an interest in real property pay for the actual improvements and benefits that they have induced. *Stafford–Smith, Inc. v. Intercontinental River East, LLC,* 378 Ill. App. 3d 236, 240 (2007) (citing *Leveyfilm, Inc. v. Cosmopolitan Bank & Trust*, 274 Ill. App. 3d 348, 352 (1995)).

¶ 63      There can thus be little argument over whether the circuit court's decision to impose sanctions against the plaintiff was informed, based on valid reasoning, and followed logically from the facts of this case. We accordingly find that the circuit court did not abuse its discretion in imposing sanctions on the plaintiff.

¶ 64      Plaintiff's second and alternative argument that the attorney fees awarded to Bank of America were unreasonably "excessive" is equally unpersuasive. According to the plaintiff, it was not "objectively reasonable" for Bank of America to expend

105 hours defending a "non-complex" mechanic's lien action that the Stuarts were able to defend successfully by expending only 54 hours. Plaintiff further argues that Bank of America improperly included in its petition four duplicative entries that were all marked for the same task of researching mechanic's lien case law. We disagree.

¶ 65    First, contrary to plaintiff's argument, a cursory comparison of the hours expended by one defendant to the hours expended by another defendant is not determinative in reviewing the reasonableness of an award of attorney fees. The mere fact that Bank of America expended more time than the Stuarts defending this lawsuit does not establish that the circuit court's award of attorney fees was unreasonably excessive. As the record reflects, Bank of America was directly involved in this litigation for over three years. During this period, the attorneys representing Bank of America participated in extensive oral and written discovery and motion practice.

¶ 66    Bank of America was also involved in this litigation in a different manner than the Stuarts. It was Bank of America's attorneys that introduced the argument that plaintiff's mechanic's lien claim was untimely filed and was not enforceable against third party creditors. See 770 ILCS 60/7(a) (West 2008). It was also Bank of America's attorneys that researched and drafted the motion to dismiss, which Bank of America brought at the onset of this litigation. There is, therefore, no reason to assume that the amount of time expended by Bank of America in this action should mirror the amount of time expended by the Stuarts.

¶ 67    There is also nothing in the record that suggests that Bank of America's entries were "duplicative" as plaintiff suggests. On the contrary, it is clear from the record that during the hearing on the reasonableness of Bank of America's petition the

circuit court carefully scrutinized each of the entries made by Bank of America in its petition for attorney fees. Indeed, the hearing transcripts establish that plaintiff was given the opportunity to object to the entries included in Bank of America's petition, that plaintiff objected to some of these entries, and that the circuit court struck down and adjusted the entries that it deemed to be unreasonable. We thus find nothing in the record that supports plaintiff's claim that the circuit court abused its discretion by awarding Bank of America duplicative and unreasonably excessive attorney fees.

¶ 68    Moreover, we must reiterate that because Rule 137 sanctions are penal in nature, we are not required to review each and every reimbursable component of an award of attorney fees that was imposed as a sanction against a party filing a frivolous lawsuit. *Riverdale Bank v. Papastratakos*, 266 Ill. App. 3d 31, 43 (1994) ("[t]he isolated focus on each reimbursable component part of preparation and trial is not necessary where false allegations made without reasonable cause are determined to be the cornerstone of the entire baseless lawsuit"); *Robertson v. Calcagno*, 333 Ill. App. 3d 1022, 1028 (2002) ("[f]ees are recoverable under Rule 137 even where they are 'lumped,' and even for unaccounted-for time entries"). The circuit court here explicitly noted that it considered the false statements made by plaintiff in its mechanic's lien claim to be "the cornerstone of the litigation." We accordingly decline to review isolated entries made in Bank of America's petition for attorney fees.

¶ 69    Finally, plaintiff incorrectly assumes that paralegal work may never be recovered as part of an award of attorney fees. Under Rule 137, a party may recover attorney fees incurred as a result of the sanctionable paper or pleading. *Robertson*, 333 Ill. App. 3d at 1028. This limitation generally precludes the recovery of office

27

overhead expenses, which an attorney incurs regardless of specific litigation. See *Harris Trust & Savings Bank v. American National Bank & Trust Co. of Chicago,* 230 Ill. App. 3d 591, 599 (1992) (citing *Kaiser v. MEPC American Properties, Inc.,* 164 Ill. App. 3d 978, 989 (1987)). Such office overhead expenses typically include "telephone charges, in-house delivery charges, in-house photocopying, check processing, newspaper subscriptions, and in-house paralegal and secretarial assistance." *Johnson v. Thomas*, 342 Ill. App. 3d 382, 401 (2003). When paralegals or other non-attorneys, however, perform special legal tasks, which would otherwise have to be performed by an attorney, the fees incurred from those tasks are recoverable because they cannot be regarded as overhead office expenses that are already included in the attorney's hourly rate. See *Merchandise National Bank of Chicago v. Scanlon*, 86 Ill. App. 3d 719, 728 (1980) (distinguishing services performed by a law student, which would otherwise have been performed by an attorney, from general administrative tasks "which would be more properly included in the attorneys' hourly rates as part of their general overhead costs"); see also *Todd W. Musburger, Ltd. v. Meier,* 394 Ill. App. 3d 781 (2009) (finding that work done by a law firm's non-attorney in-house consultant was recoverable).

¶ 70    In the present case, the circuit court carefully reviewed all the entries pertaining to paralegal work that were included in Bank of America's petition for attorney fees. In considering those entries, the circuit court explained that Bank of America was only entitled to recover for the paralegal work involving legal tasks that would otherwise have to be performed by an attorney.

¶ 71     After reviewing those entries, the circuit court found that some of the paralegal work described in Bank of America's petition involved work of the kind that would otherwise have to be completed by an attorney. For example, the circuit court found that Bank of America's paralegals performed "legal tasks" when they researched the title history of the property subjected to plaintiff's mechanic's lien claim and when they drafted a memorandum to the supervising attorneys summarizing the results of this title search. Conversely, the circuit court did not allow Bank of America to recover for the entries involving the paralegals performing general administrative tasks, such as updating the case status reports and organizing the case file.

¶ 72     The record thus makes it clear that the circuit court did not simply rubber-stamp Bank of America's petition for attorney fees. Rather, the circuit court applied its discretion and reviewed each of the entries involving work performed by paralegals. We thus find no basis in the record supporting plaintiff's argument that the circuit court abused its discretion by erroneously reimbursing Bank of America for office overhead expenses.

¶ 73     Having addressed each of plaintiff's objections to the circuit court's award, we find that the circuit court appropriately awarded $26,291.02 in attorney fees to Bank of America as a sanction under Rule 137.

¶ 74                              CONCLUSION

¶ 75     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 76     Affirmed.