2021 IL App (1st) 200940-U

FIFTH DIVISION
November 12, 2021

No. 1-20-0940

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| FRANCES JURKOVIC, | ) | Appeal from the |
| | ) | Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | Case No. 18 L 2299 |
| | ) | |
| BOULDER DEVELOPERS, INC., | ) | Honorable Diane M. Shelley, |
| | ) | Judge Presiding. |
| | ) | |
| Defendant-Appellee. | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Delort and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held:*   The trial court did not err when it concluded that plaintiff did not prove damages for her breach of contract claim and when it found that plaintiff did not prove intent to defraud for her claim under the Mechanics Lien Act; affirmed.

¶ 2    Plaintiff, Frances Jurkovic, appeals from the trial court's order that entered judgment in favor of defendant, Boulder Developers, Inc., and against plaintiff on her claims for breach of contract and violation of the Mechanics Lien Act (770 ILCS 60/1 (West 2018)). On appeal, plaintiff contends the trial court erred when it determined that she was not entitled to any

damages on her breach of contract claim and when it found she did not prove intent to defraud for her claim under the Mechanics Lien Act claim. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        This case is based on a breach of contract action between plaintiff and defendant. In December 2016, plaintiff and defendant entered into a contract for the construction project on plaintiff's residence and in February 2017, plaintiff terminated defendant's services due to defects in defendant's work.

¶ 5                    Plaintiff's Complaint and Defendant's Counterclaim

¶ 6        After defendant filed a mechanics lien on plaintiff's property, plaintiff filed a complaint against defendant that alleged as follows. In 2016, plaintiff began remodeling her home in Chicago by converting a two-flat residential building into a single-family home. In December 2016, she replaced her original construction company with defendant and entered into a building contract with defendant for the project. The contract price for the project was $296,836. The contract allowed for change orders and plaintiff executed four change orders totaling $27,886. The total price for the work contained in the contract including the change orders was $321,002. Plaintiff made a $100,000 down payment to defendant at the time the parties executed the contract, and she also paid $27,886 for the change orders.

¶ 7        Defendant started working on the project in October 2016. During the next five months, defendant performed deficient work, which included, *inter alia*, the failure to level floor joists and the ceiling. Defendant also failed to comply with the plans, specifications, and relevant building standards and codes, which included failing to build stairs that complied with construction permit drawings and the Chicago Building Code. Due to the defects, plaintiff terminated defendant's services in February 2017.

¶ 8        Defendant gave plaintiff documents reflecting that the total amount for its labor costs and expenses was $87,400.19. With a 20% profit and management fee added to that amount, the total amount defendant spent was $104,880.23. According to plaintiff, she had already paid $127,886, so defendant should have refunded her $23,005.77. Instead, defendant filed a mechanics lien against her in March 2017 for $93,636, which was based on a false methodology. Plaintiff alleged she retained another construction company to complete the work and she spent $75,000 to correct defendant's defective work. Many of the items that defendant completed had to be fixed or completely redone, including, *inter alia*, steel posts in the kitchen, a beam on the second floor at the roof, wooden framing throughout the home, and stairs between the floors.

¶ 9        Plaintiff  asserted claims for breach of contract and violation of the Mechanics Lien Act (770 ILS 60/1, *et seq.*) (West 2018)). In plaintiff's breach of contract claim, she alleged that defendant did not conduct its work according to the plans and specifications provided by plaintiff, failed to comply with the building code, and failed to correct or remedy construction deficiencies in a timely manner. As a result of defendant's breaches, plaintiff sustained damages when she paid for defendant's defective work. In plaintiff's claim for violation of the Mechanics Lien Act, she alleged that in March 2017, defendant filed a mechanics lien against her property in the amount of $93,636,  knowing that it included fraudulent and inflated calculations for the amount. Defendant recorded a release of the lien on December 14, 2017.

¶ 10        Plaintiff attached to her complaint the "Contractor's Notice and Claim for Mechanics Lien" filed by defendant that stated as follows. Defendant entered into a contract with plaintiff on December 9, 2016, to perform demolition, electrical, flooring and tile, and carpentry work on her property. Defendant performed its part of the contract and plaintiff terminated the contract. The initial contract price was $296,836, and plaintiff requested an additional $27,886 in change

orders. Plaintiff paid defendant a total of $127,886 and  was entitled to credits in the amount of $103,200 for the work that defendant did not complete as a result of plaintiff terminating the contract. After allowing for credits, deductions, and set offs, plaintiff owed defendant $93,636.

¶ 11                              Defendant's Counterclaim

¶ 12      Defendant filed a counterclaim against plaintiff for breach of contract that alleged as follows. The parties entered into  a contract for the building project in December 2016 for $296,836, plus an additional $27,886 in change orders, for a total of $321,002. Plaintiff paid defendant a $100,000 down payment and $27,886 for the change orders. In February 2017, four months after defendant began working on the project, the project was nearly complete, and plaintiff terminated defendant's services. Plaintiff refused to pay defendant the amount agreed upon in the contract and owed defendant $221,522.

¶ 13                          Bystander's Report of the Bench Trial

¶ 14      The record on appeal does not contain a transcript of the February 2020 bench trial. On November 12, 2020, the trial court issued a bystander's report pursuant to Illinois Supreme Court Rule 323(c) (eff. Jul. 1, 2017). The report states as follows. Plaintiff hired defendant, a contractor, to rehab her home. Plaintiff subsequently terminated defendant's services and contended that defendant's work had significant defects. Plaintiff alleged that she had been damaged from defendant's overcharges, the costs to repair defendant's faulty work, and the fraudulent mechanics lien that defendant filed in the amount of $93,636 on her property. Defendant contended that its work was merely unfinished and that any defects were the result of work done by plaintiff's prior contractor and because plaintiff prematurely terminated defendant before it could complete the work.

¶ 15    At trial, plaintiff's retained expert, Chris Perry, identified numerous defects in the construction project, including a joist being cut too short, issues with the construction of a set of stairs, a steel column that was not plumb, missing blockings, and joists that were improperly installed. Perry could not claim it was defendant's work that was done defectively. Defendant's president, Vince Bestrick, and its former employee, Bill Holmes, testified that the defects Perry identified were either defects remaining from the prior contractor or were temporary measures that defendant intended to correct during the project but could not because plaintiff prematurely terminated defendant.

¶ 16    The bystander's report further stated that plaintiff paid defendant $127,886.01 towards the contract price of $324,722. Plaintiff and Vidas Butkus, the general contractor who replaced defendant on the project, testified that plaintiff spent about $150,000 to complete the project after she terminated defendant. Plaintiff did not produce any bills, receipts, invoices, quotes, or any other documentation to support this amount. Plaintiff did not provide any expert testimony about the amount of her economic losses or the relationship between her subsequent payments and defendant's allegedly defective work. Plaintiff testified that she paid another entity about $15,000 to rectify problems with the stairs that defendant built to the basement, but did not provide any proof or documentation for the work. Butkus testified that it cost plaintiff $50,000 to correct the destruction defects, but he did not provide any documentation. Butkus could not tell whether that amount was related to defendant's allegedly defective work.

¶ 17    Exhibits admitted at trial showed that defendant spent $38,708.12 on labor and $48,697.07 on materials. In February 2017, defendant sent plaintiff a final invoice claiming she owed $93,636 based upon estimated work values and in March 2017, defendant filed a

mechanics lien, claiming that $93,636 was due and unpaid. In December 2018, defendant filed a supplemental answer to plaintiff's interrogatories regarding how it calculated the $93,636.

¶ 18                                    Trial Court's Order

¶ 19       Following the bench trial, the court issued an order on plaintiff's complaint and defendant's counterclaim. The court found that plaintiff "established that it is more probably true than not that defendant's conduct caused material defects in the basement stairs, framing, joists and support beams." The court concluded that it was unlikely that defendant would have cured the defects because it denied the existence of the defects and minimized their importance. Defendant denied that the basement stairs were improper, the framing was misaligned, the cuts in the joists were not properly stabilized, and the steel support beam was leaning. The court concluded that defendant breached the contract and plaintiff was justified in terminating the contract.

¶ 20       However, the court found that plaintiff failed to prove damages for her breach of contract claim. The court cited Comment e of section 347 of the Restatement (Second) of Contracts, which states: "If a plaintiff makes an especially favorable substitute transaction to finish the construction—so that she sustains a smaller loss than might have been expected—her damages are reduced by the loss avoided as a result of that transaction." The court stated that the total price of the contract with the change orders was $324,722, plaintiff paid defendant $127,886.01 towards the contract, and plaintiff paid $150,000 to complete the project. The court concluded that the total amount plaintiff paid did not exceed $300,000, which was less than the contract price.

¶ 21       As for plaintiff's claim under the Mechanics Lien Act, the court concluded that plaintiff did not present evidence to support her claim, noting that she did not show that

defendant knowingly filed the lien with a substantial overcharge or that the alleged overcharge was substantial enough to constitute a violation. The court stated that an error or overcharge relating to a legitimate dispute does not violate the Mechanics Lien Act unless there is a showing that the error or overcharge was made with the intent to defraud.

¶ 22    Addressing defendant's breach of contract claim, the court stated that there was insufficient evidence to establish that plaintiff breached the contract.

¶ 23                    Plaintiff's Motion to Reconsider

¶ 24    Plaintiff filed a motion to reconsider. She contended the court incorrectly calculated her damages for her breach of contract claim, arguing that under the theory of *quantum meruit*, defendant was not entitled to keep any amount it did not earn. She asserted that defendant admitted it spent $87,400.19 for materials and labor on the project, for a total of $102,672.24 with insurance and overhead costs included. Further, defendant admitted plaintiff paid it $127,886 and that, therefore, she was entitled to a refund for the amount she overpaid, which was $25,213.76. Plaintiff also stated that the evidence was undisputed that she paid $65,000 to correct defendant's defective work and she was entitled to recover that amount. Plaintiff further stated that she proved that defendant violated the Mechanics Lien Act. She asserted that the mechanics lien that defendant filed was constructively fraudulent because the claimed amount of $93,636 was unjustified and not based on actual work defendant completed.

¶ 25    In response, defendant contended that plaintiff confused defendant's right to recover on its counterclaim with her own right to recover damages against defendant. Defendant asserted that plaintiff's cost of completing the project was less than the amount plaintiff had bargained for in the contract and therefore her damages were zero. Defendant also stated that the evidence did not show it violated the Mechanics Lien Act.

¶ 26                    Trial Court's Order on Plaintiff's Motion to Reconsider

¶ 27        The court denied plaintiff's motion to reconsider. In a written order, the court recalled finding that defendant breached the contract and plaintiff failed to prove damages, as she did not prove that her remedial costs were more expensive than what she would have paid defendant to perform the same tasks. The court acknowledged plaintiff's argument that defendant should not receive a "windfall" for the defective work. Yet, plaintiff was "not entitled to enter into a contract with the original contractor and subsequently end up paying less than what she bargained for by going to another contractor, and also receive her money back from the original contractor who did perform some of the work." As for the Mechanics Lien Act claim, the court stated that in making its finding that there was no "intent to defraud," the court took "into account all the facts and circumstances of the case and the credibility of the witnesses" and that based on these observations, it found that plaintiff did not carry her burden of proving fraudulent intent.

¶ 28                                II. ANALYSIS

¶ 29        On appeal, plaintiff contends that she was entitled to damages on her breach of contract claim. She argues she is entitled to a refund of her prepayment that defendant did not earn. She asserts that defendant's own records showed that it incurred $87,400.19 in charges for materials and labor, for a total of $102,672.24 when insurance and overhead costs are added. She argues that defendant admitted she paid $127,886 and so she is entitled to a refund of $25,213.76 for the amount she paid that defendant did not earn. Plaintiff also contends that the undisputed evidence showed that she had to pay $65,000 to correct the defects from defendant's work and that she is entitled to recover that amount. She argues she is entitled to $65,000 for the costs to repair defendant's defective work, plus the refund of $25,213.76, for a total of $90,21.75.

¶ 30    "To establish a breach of contract claim, a plaintiff must prove the existence of a valid and enforceable contract, performance by the plaintiff, breach of the contract by the defendant, and damages or injury to the plaintiff resulting from the breach." *Carlson v. Rehabilitation Institute of Chicago*, 2016 IL App (1st) 143853, ¶ 13. Defendant does not dispute the court's finding that it breached the contract. The only issue is whether plaintiff proved her damages.

¶ 31    The amount of recoverable damages is a question of fact for the trier of fact. *Koehler v. Packer Group, Inc.,* 2016 IL App (1st) 142767, ¶ 60. We determine whether the trial court's findings were against the manifest weight of the evidence. *Fieldcrest Builders, Inc. v. Antonucci*, 311 Ill. App. 3d 597, 607 (1999). A decision is considered against the manifest weight of the evidence only when an opposite conclusion is clearly apparent or when the findings are unreasonable, arbitrary, or not based on the evidence. *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002). However, we review *de novo* the measure of damages on which the factfinder's computation is based because it is a question of law. *Koehler,* 2016 IL App (1st) 142767, ¶ 60. Plaintiff, as the party seeking to recover damages, has the burden of proving that she sustained damages "resulting from the breach and establishing both the correct measurement of damages and the final computation of damages based on that measurement." *Ollivier v. Alden*, 262 Ill. App. 3d 190, 196 (1994).

¶ 32    "The purpose of damages is to put the nonbreaching party into the position *** she would have been in had the contract been performed, but not in a better position." *Walker v. Ridgeview Construction Co.,* 316 Ill. App. 3d 592, 596 (2000). Further, the "proper measure of damages for a breach of contract is the amount of money necessary to place the plaintiff in a position as if the contract had been performed." *In re Illinois Bell Telephone Link–Up II & Late*

*Charge Litigation,* 2013 IL App (1st) 113349, ¶ 19. When there is partial performance by a contractor, the measure of damages is "the difference between the cost of constructing, by contract, the building the contractor agreed to put up, and the fair cost market price of erecting such building." *Ross v. Danter Associates, Inc.*, 102 Ill. App. 2d 354, 370-71 (1968). This rule "gives due effect to the partial performance by both contractor and owner independently of any issues regarding the earning of the partial payment or the refund thereof." *Id.* Further, a "builder's right to recover monies due under the contract is separate from the issue of the purchaser's measure of damages." *Castricone v. Michaud,* 223 Ill. App. 3d 138, 141 (1991).

¶ 33      Section 347 of the Restatement (Second) of Contracts (1981), entitled "Measure of Damages in General," states:

> "[T]he injured party has a right to damages based on his expectation interest as
>
> measured by
>
> (a) the loss in the value to him of the other party's performance caused by its failure
>
> or deficiency plus
>
> (b) any other loss, including incidental or consequential loss, caused by the breach,
>
> less
>
> (c) any cost or other loss that he has avoided by not having to perform." Restatement

(Second) of Contracts § 347 (1981).

Section 347(e) of the Restatement (Second) of Contracts (1981) states:

> "*Actual loss caused by breach*. The injured party is limited to damages based on his
>
> actual loss caused by the breach. If he makes an especially favorable substitute
>
> transaction, so that he sustains a smaller loss than might have been expected, his damages

are reduced by the loss avoided as a result of that transaction. See Illustration 12."

(Emphasis in original.) Restatement (Second) of Contracts § 347(e) (1981).

Illustration 12 states:

"A contracts to build a house for B for $100,000, but repudiates the contract after doing part of the work and having been paid $40,000. Other builders would charge B $80,000 to finish the house, but B finds a builder in need of work who does is for $70,000. B's damages are limited to the $70,000 that he actually had to pay to finish the work less the $60,000 cost avoided or $10,000, together with damages for any loss caused by the delay." Restatement (Second) of Contracts § 347(e) (1981).

¶ 34        Applying the standards above, the trial court properly concluded that plaintiff failed to prove damages. Initially, we note that the trial court found that the total contract price with the change orders was $324,722 and plaintiff paid defendant $127,886.01 towards that contract price. The court stated that plaintiff incurred about $15,000 to correct the basement stairs and the testimony at trial was that she incurred $150,000 with a new contractor to complete the project. The court noted that plaintiff referenced "additional carpentry work, but never provided specifics." The parties do not dispute these findings and they are not against the manifest weight of the evidence. Thus, the evidence established that plaintiff spent approximately $292,000 for her construction project, which was less than the $324,722 contract price with defendant. Because the amount plaintiff spent to complete and repair the project did not exceed the original contract price with defendant, she did not incur any damages. See *Castricone*, 223 Ill. App. 3d at 139-141 (where the contractor provided poor workmanship and the plaintiffs spent additional money to finish the project and repair/replace defective construction, the measure of damages was the amount in excess of the contract price that was incurred to complete the home). Thus,

after plaintiff's construction project was completed, plaintiff was in the same, or better, position than she would have been in had the contract with defendant been fully performed. The court correctly determined that plaintiff did not prove her damages.

¶ 35    Plaintiff asserts that "[i]f a contractor's work amounts to less than substantial performance, then recovery on the contract is barred, and only recovery under a quasi-contractual theory for the reasonable value of services is allowed." However, the court awarded judgment in favor of plaintiff on defendant's breach of contract claim and the issue here is the measure of plaintiff's damages, not defendant's right of recovery as the builder. As previously discussed, plaintiff's total cost to complete the construction project was less than the original contract price with defendant and so she was in the same, or better, position as she would have been in had the original contract been performed. Again, the trial court correctly determined that plaintiff did not prove she sustained damages as a result of defendant's breach.

¶ 36    Plaintiff next contends that the mechanics lien that defendant placed on her property for $93,636 was constructively fraudulent and she should be awarded damages for the improper lien. Plaintiff asserts that defendant could not have reasonably believed she owed an additional $93,636, when she had already paid $127,886.01 and defendant's own documents showed that it only spent $102,672.24 on materials and labor. She asserts that the entire amount was improper and a 100% overstatement.

¶ 37    The Mechanics Lien Act (Act) (770 ILCS 60/7 (West 2018)) "is a comprehensive statutory enactment that outlines the rights, responsibilities, and remedies of parties to construction contracts, including owners, contractors, subcontractors, and third parties." *Father & Sons Home Improvement II, Inc. v. Stuart*, 2016 IL App (1st) 143666, ¶ 29. The purpose of the Act "is to require the individual with an interest in real property to pay for improvements or

benefits that were induced by *** her own conduct." *MEP Construction LLC v. Truco MP, LLC*, 2019 IL App (1st) 180539, ¶ 14. The right to a mechanics lien claim is a statutory right and to be eligible for relief, a contractor must strictly comply with the requirements set forth in the Act. *Father & Sons Home Improvement II, Inc.,* 2016 IL App (1st) 143666, ¶ 30.

¶ 38       Section 7(a) of the Act provides that no lien "shall be defeated to the proper amount thereof because of an error or overcharging on the part of any person claiming a lien therefor under this Act, unless it shall be shown that such error or overcharge is made with intent to defraud." 770 ILCS 60/7(a) (West 2018). "This section is 'intended to protect an honest lien claimant who makes a mistake rather than a dishonest claimant who knowingly makes a false statement.' " *Cordeck Sales, Inc. v. Construction Systems, Inc.*, 382 Ill. App. 3d 334, 371 (2008) (quoting *Peter J. Hartmann Co. v. Capitol Bank & Trust Co.*, 353 Ill. App. 3d 700, 706 (2004)).

¶ 39       If there is evidence that the person claiming the lien knowingly filed a lien claim that contained a "substantial overcharge," the claim will be defeated based on constructive fraud. *Id.* 371. However, "a lien claim will not be invalidated simply because the claim contains an overstatement." *Id.* at 373. Rather, to invalidate a lien claim based on constructive fraud "there must be additional evidence demonstrating that the contractor *knowingly* made the overstatement or overcharge." (Emphasis in original.) *Father & Sons Home Improvement II, Inc.*, 2016 IL App (1st) 143666, ¶ 34. The intent to defraud may be shown by "executed documents that on their face overstate the amount *due in combination with some other evidence of record from which intent could be inferred*.' " (Emphasis in original.) *Cordeck Sales, Inc.*, 382 Ill. App. 3d at 373 (quoting *Peter J. Hartmann Co.*, 353 Ill. App. 3d at 708). In Illinois, "courts have consistently based findings of constructive fraud upon the existence of such additional evidence." *Cordeck Sales, Inc. v. Construction Systems, Inc.*, 394 Ill. App. 3d 870, 879 (2009).

¶ 40      As a reviewing court, we "will only reverse the trial court's findings of fact if they are against the manifest weight of the evidence." *Roy Zenere Trucking & Excavating, Inc. v. Build Tech, Inc.*, 2016 IL App (3d) 140946, ¶ 32. Further, the "existence of an intent to defraud is a question of fact for the fact finder and will not be disturbed on appeal unless it is against the manifest weight of the evidence." *Edward M. Cohon & Associates., Ltd. v. First National Bank of Highland Park*, 249 Ill. App. 3d 929, 938 (1993). As stated above, a  finding is considered against the manifest weight of the evidence if, upon reviewing the evidence in the light most favorable to the  prevailing party, an opposite conclusion is clearly apparent, or the finding is palpably erroneous or arbitrary and not supported by the evidence. *Roy Zenere Trucking & Excavating, Inc.*, 2016 IL App (3d) 140946, ¶ 32.

¶ 41      Here, the trial court, who presided over the bench trial and heard the testimony, concluded that plaintiff did not present evidence to support her violation of Mechanics Lien Act claim. In denying plaintiff's motion to reconsider, the court stated that in making its finding that there was no intent to defraud, it took "into account all the facts and circumstances of the case and the credibility of the witnesses." The record does not include a transcript of the witnesses who testified at the bench trial. The trial court's bystander's report states that it heard testimony from defendant's president and a former employee. However, the bystander's report does not contain a summary or description of these witnesses' testimony regarding the basis for the mechanics lien or how the $93,636 lien was calculated. The bystander's report states that defendant sent plaintiff a final invoice in February 2017 claiming she owed $93,636 and that in December 2018 defendant filed a supplemental answer to plaintiff's interrogatories regarding how defendant claimed to have calculated that amount. The bystander's report contains a list of exhibits, including the invoice and defendant's supplemental answer to plaintiff's interrogatories

in which defendant set forth how it calculated the $93,636 amount. However, it is not clear whether these exhibits were admitted at trial, and we do not know whether there was any testimony about them or testimony about how defendant calculated the amount contained in them. The bystander's report also states that in closing argument defendant claimed it was owed $93,636, minus $2,800 for legal fees and the amount required to alter the stairs, but we do not have the transcript of the closing argument regarding the basis for this claim.

¶ 42    As the appellant, it is plaintiff's burden to present a sufficiently complete record of the proceedings at trial to support her claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). If we are not provided with a complete record, we must presume that the order entered by the trial court was in conformity with the law and that it had a sufficient factual basis to do so. *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 67. "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch*, 99 Ill. 2d at 391-92. "In fact, when the record on appeal is incomplete, a reviewing court should actually 'indulge in every reasonable presumption favorable to the judgment from which the appeal is taken, including that the trial court ruled or acted correctly.' " *Smolinski v. Vojta*, 363 Ill. App. 3d 752, 757-58 (2006) (quoting *People v. Majer,* 131 Ill. App. 3d 80, 84 (1985)).

¶ 43    Because we do not have a complete record regarding defendant's testimony with respect to how the lien was calculated, we must presume the trial court's finding that there was no intent to defraud conformed with the law and had a sufficient factual basis. The trial court correctly found that plaintiff failed to prove intent to defraud for her claim under the Act.

¶ 44                                III. CONCLUSION

¶ 45    We affirm the trial court's order that found plaintiff did not prove damages for her breach of contract claim and did not prove intent to defraud for her claim under the Act.

¶ 46        Affirmed.